

JACKSON WALKER L.L.P.
ATTORNEYS & COUNSELORS

Maryellen Shea
713-752-4449 Direct Dial
(713) 754-6719 Direct Fax
mshea@jw.com

May 11, 2009

**VIA ELECTRONIC FILING**
Clerk of the Court
United State District Court
Southern District of Texas
Galveston Division
601 Rosenberg, Room 411
Galveston, TX  77550

    Re:    Cause No. 09cv044; *American National Insurance Company, et al. v. JPMorgan Chase & Co., and JPMorgan Chase Bank, National Association*; In the United States District Court for the Southern District of Texas, Galveston Division.

Dear Clerk of the Court:

    Attached for filing in the above-referenced matter is the JPMC Defendants' *Motion to Transfer or Dismiss for Improper Venue, and Joinder in Motion of Intervenor-Defendant FDIC-Receiver to Transfer or Dismiss for Improper Venue*.

    By copy of this letter, together with a copy of the above document, we are notifying counsel for Plaintiffs of the filing of the same.

Sincerely,

Maryellen Shea

5509295v.1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| AMERICAN NATIONAL INSURANCE COMPANY, et al. | § § § § § § § § § § § § § | |
| Plaintiffs, | | |
| vs. | | CIVIL ACTION NO. 3:09-CV-00044 |
| FDIC, as Receiver for Washington Mutual Bank, Henderson, Nevada, et al. | | |
| Defendants. | | |

**JPMORGAN CHASE DEFENDANTS' MOTION TO TRANSFER OR DISMISS FOR IMPROPER VENUE, AND JOINDER IN MOTION OF INTERVENOR-DEFENDANT FDIC-RECEIVER TO TRANSFER OR DISMISS FOR IMPROPER VENUE**

1. Plaintiffs in this case are 9 insurance companies from Missouri, New York, California, Texas and Colorado. They claim that JPMorgan Chase & Co. ("JPMC & Co.")[1] and JPMorgan Chase Bank, N.A. ("JPMC Bank"; collectively with JPMC & Co. sometimes referred to as the "JPMC Defendants") conspired with or coerced the United States government, in the form of the Federal Deposit Insurance Corp. ("FDIC"), to sell assets of Washington Mutual Bank ("WMB") to JPMC Bank all as part of a scheme to strip Washington Mutual of valuable assets "without compensating the company or its stakeholders." *Plaintiffs' Original Petition* ("*Pet.*") ¶30.

2. Because the Plaintiffs' claims go to the core of the process by which the FDIC sold to JPMC Bank what had been WMB assets (and were then FDIC assets), the FDIC intervened in the case, removed to it to this Court and then moved to have it transferred pursuant to 12 U.S.C. § 1821(d)(6) and 28 U.S.C. § 1406(a). The FDIC moved in the alternative that the

---

[1] JPMorgan Chase & Co. files this motion subject to its Special Appearance and without waiving its right to challenge personal jurisdiction in this matter.

case be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a). (Docket No. 5). The JPMC Defendants now hereby join in and adopt the Motion of Intervenor-Defendant FDIC-Receiver to Transfer or Dismiss for Improper Venue and move for similar relief.[2] Transfer is mandated by FIRREA, and would be appropriate under 28 U.S.C. § 1404(a) in any event.

## I.   FIRREA MANDATES TRANSFER OF THIS ACTION TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA.

3.      FIRREA enables the government to expeditiously wind up the affairs of failed banks and ensures that assets of a failed financial institution are distributed fairly and promptly among those with valid claims against the institution. *Freeman v. Federal Deposition Ins. Corp.*, 56 F.3d 1394, 1401-02 (D.C. Cir. 1995) (internal cites omitted). Because of FIRREA's breadth, Plaintiffs acknowledge, as they must, that its administrative and exhaustion requirements apply not only to "actions seeking a determination of rights with respect to the assets of" a failed depository institutions, but also to claims relating to "any act or omission of" the FDIC as receiver for such an institution. *See Plaintiffs' Response to FDIC-Receiver's Motion to Transfer (Pls' Resp.)* at 5 (quoting *American First Fed., Inc. v. Lake Forest Park, Inc.*, 198 F.3d 1259, 1263 (11th Cir. 1999)).

4.      Plaintiffs nevertheless assert that FIRREA does not apply here because they did not sue the FDIC and because they make allegations about conduct by JPMC Bank prior to WMB's failure. *Pls' Resp.* at 2-4. Plaintiffs are wrong. Their claims lack merit, but they would not even be able to make their allegations were it not for the FDIC's seizure of WMB and sale of

---

[2] Plaintiffs filed a Response to the FDIC-Receiver's Motion (Docket No. 11) in which they erroneously conclude that (1) the FDIC lacks standing to seek a transfer of venue, (2) Plaintiffs are not bound by FIRREA because they allege only state law claims and have not sued WMB or the FDIC as receiver for WMB, and (3) venue is proper in the Southern District of Texas. Plaintiffs' position is at odds with their pleading in this case, and the comprehensive administrative scheme and policies underlying the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1821 *et seq.*

its assets to JPMC Bank, including the FDIC's alleged conduct leading up to that sale. Indeed, despite their protests to the contrary, the Plaintiffs assert in their Original Petition that:

- The FDIC sold the crown jewels of WMB to JPMC Bank at a fire sale price. ¶21
- The FDIC worked with JMC Bank to design bidding parameters that would suit JPMC Bank's needs and would rule out other potential bidders. ¶25
- FDIC told JPMC Bank it wanted to immediately auction off the assets after the seizure. ¶47
- The FDIC agreed to and participated in a plan with JPMC Bank through which federal regulators would seize WMB and certain valuable assets would be passed to JPMC Bank. ¶47
- From September 4 to September 25, 2008, the FDIC had discussions with JPMC Bank regarding seizure of WMB and JPMC Bank's purchase of WMB's valuable assets and the stripping away of WMB's liabilities. ¶47
- The FDIC pressured the OTS to seize WMB. ¶48
- The FDIC negotiated with JPMC Bank for the purchase of cherry-picked assets out of receivership. ¶53
- The FDIC created and participated in a phony bidding process through which it sought bids from select bidders for the sale of WMB's assets, even though it had already negotiated and reached an agreement with JPMC Bank regarding the sale. ¶62
- That agreement culminated in the FDIC's signing with JPMC Bank a "Whole Bank Purchase Assumption" agreement whereby the FDIC, as receiver, sold WMB assets to JPMC Bank for $1.9 billion. ¶67
- WMB, through the FDIC as receiver for WMB, has failed and refused to meet its obligations under the bond contracts. ¶91

In short, plaintiffs' claims relate to acts or omissions "of the FDIC as receiver for" WMB. They cannot seriously assert that FIRREA does not apply, that the FDIC is not a properly intervening party to this lawsuit or that the FDIC lacks standing to seek a transfer of venue.³

---

³ Implicit in Plaintiffs' argument is a basic truth of Texas civil procedure: the FDIC is a party until and unless it is stricken as a party. TEX. R. CIV. P. 60. Thus, the FDIC became a party for all purposes when it filed its plea in intervention. Since the FDIC was a party at the moment of removal, jurisdiction vested for all purposes. *See Bank One Texas Nat'l Ass'n v. Morrison*, 26 F.3d 544, 547 (5th Cir. 1994). It should remain a party given the Fifth Circuit's very broad view of Fed. R. Civ. P. 24 as allowing "intervention where no one would be hurt and the greater justice could be attained." *John Doe No.1*, 256 F.3d 371, 375 (5th Cir. 2001); *See also Heaton v. Monogram Credit Card Bank of Georgia*, 297 F.3d 416, 422-424 (5th Cir. 2002) (finding that the FDIC not only had a substantial interest based upon the facts of the case under FED. R. CIV. P. 24(a)(2), but also has a broader interest in protecting

5. Courts routinely reject plaintiffs' efforts to plead around FIRREA's mandates by not naming the FDIC as a defendant, by asserting that they are not making claims related to a failed bank's assets, or by filing their lawsuit in state court. *See Brady Dev. Co., Inc. v. Resolution Trust Corp.*, 14 F.3d 998, 1002-03 (4th Cir. 1994); *Village of Oakwood v. State Bank & Trust Co.*, 519 F. Supp. 2d 730, 738 (N.D. Ohio 2007), *aff'd* 539 F.3d 373 (6th Cir. 2008). In *Village of Oakwood*, for example, uninsured depositor plaintiffs sued the assuming bank in state court, alleging a variety of state law theories, including constructive trust (*i.e.*, unjust enrichment) and aiding and abetting a breach of fiduciary duty. After the FDIC intervened and removed, *see Village of Oakwood*, 519 F. Supp. 2d at 733, plaintiffs argued that their claims were not claims against a depository institution for which the FDIC was receiver under 12 U.S.C. §1821(d)(6). The Court rejected plaintiffs' argument stating that "[t]his naked assertion appears to be an argument that because the Uninsured Depositors have sued only [assuming bank], rather than the FDIC, their claims fall completely outside of the framework of FIRREA's administrative process. The problem with this novel argument is that all of their claims against [assuming bank] are directly related to acts or omissions of the FDIC as the receiver of [the failed bank]." *Village of Oakwood*, 539 F.3d at 386.

6. If plaintiffs could simply avoid FIRREA's comprehensive regulatory scheme by bringing claims against banks and other entities who purchase assets of a failed bank (and not the failed bank itself or the FDIC), the very litigation that FIRREA is designed to avoid would be encouraged. *Brady Dev. Co.*, 14 F.3d at 1006 (permitting a claimant to pursue a claim despite its failure to exhaust remedies "would thwart FIRREA's purposes and permit creditors to evade the comprehensive administrative claims procedures envisioned by the statute"). FIRREA's

---

the proper and consistent application of the Congressionally designed framework to ensure the safety and integrity of the federal deposit insurance system).

comprehensive design was intended to resolve claims involving failed banks in a more efficient and expeditious manner, with special emphasis on finality. *Id.* at 1002. Indeed, "an assuming bank would rarely be inclined to enter a P & A agreement with the FDIC knowing that it could be taking on unidentified liabilities of undefined dimensions that could arise at some uncertain date in the future." *Village of Oakwood*, 519 F. Supp. 2d at 738.

7. Under the circumstances, and especially given plaintiffs' concession that the mandatory venue provision of 12 U.S.C. § 1821(d)(6)(A) governs judicial review of the FDIC receivership claims administration process, *see Pls' Resp., page 3, footnote 2*, this case properly belongs in the District of Columbia. Indeed, "regardless of whether the [Receiver's] disposition of the [assets] may have involved an inadequate price, inadequate competition, unequal treatment of [Plaintiff] as a potential offeror, or failure of the [Receiver] to make a determination regarding maximizing the net present value return on the sale," the court has no jurisdiction to bypass the provisions of FIRREA. *Ward v. Resolution Trust Corporation*, 996 F.2d 99, 103-104 (5th Cir. 1993) (distinguishing between the FDIC exercising a function or power clearly outside the scope of the Receiver's power and improperly exercising a function or power that is clearly authorized by statute).

8. Finally, the FDIC's standing and intervention in this case is also more than justified based upon the Purchase and Assumption Agreement, Whole Bank, (the "P&A Agreement") between the FDIC and JPMC Bank. *See the P&A Agreement attached hereto as Exhibit A.* Pursuant to Article XII § 12.1(a)(1), (2),(6), (7) and (9) of the P&A Agreement, JPMC Bank has tendered this matter to the FDIC to indemnify JPMC Bank for plaintiffs' claims. For this reason alone, the FDIC has an interest and stake in the outcome of this litigation. *See Pernie Bailey Drilling Co. v. FDIC*, 905 F.2d 78, 80 (5th Cir. 1990) (finding that the FDIC had

sufficient interest in the litigation based in part on the FDIC's potential obligations of indemnity within a P&A); *First Gibralter Bank fsb v. Bradley*, 98 F.3d 1338, 1996 WL 556852, at *4 & n.9 (5th Cir. 1996) (unpublished) (the FDIC's obligation to indemnify the assuming bank constituted sufficient financial interest in the litigation to justify proper party status); *Village of Oakwood*, 519 F. Supp. 2d at 732-734 (FDIC's status as a defendant in the case was based upon an indemnity provision within the P&A agreement between the FDIC and the assuming bank).

## II.   TRANSFER WOULD BE APPROPRIATE UNDER 28 U.S.C. SECTION 1404(a) IN ANY EVENT.

9.   Even if the case were properly before the United States District Court for the Southern District of Texas, it still should be transferred pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides for the transfer of properly venued cases "[f]or the convenience of the parties and witnesses and in the interest of justice." *Id.* Ordinarily, a 1404(a) analysis requires the balancing of a series of private and public factors. *See, e.g., In re Volkswagen of Am.*, 545 F.3d 304, 315 (5th Cir. 2008). The former focus on the burdens to the litigants and witnesses of litigating in the plaintiffs' chosen forum (each party's access to proof; availability of compulsory process; cost of attendance of witnesses; and other "practical problems that make trial of a case easy, expeditious and inexpensive."). *Id.* The latter focus on the systemic concerns including the local interest in local controversies, administrative issues concerning court congestion, and the like.

10.   While a plaintiff's choice of venue is accorded some deference, in certain circumstances it should not be as when, for example, the plaintiffs do not reside in the chosen forum, or "'the operative facts of the dispute occur[red] outside of the plaintiff's chosen forum.'" *Chapman v. Dell, Inc.*, No. EP-09-cv-7-KC, 2009 WL 1024635, at *5 (W.D. Tex. Apr. 15, 2009) (quoting *Icon Indus. Controls Corp. v. Cimetrix, Inc.*, 921 F. Supp. 375, 383 (W.D. La. 1996)

(brackets in original)). Moreover, when considering the balance of the standard factors, the Court must weigh "in the interest of convenience and judicial economy ... the existence of related actions in the transferee district." *SEC v. Captain Crab, Inc.*, 655 F. Supp. 615, 618 (S.D.N.Y. 1986). Here, there is already an action pending in the District of Columbia to which the FDIC and Washington Mutual, Inc., WMB's former parent, are parties, and in which JPMC & Co. has moved to intervene. The District of Columbia action involves a broad array of factual and legal issues potentially relevant to the claims plaintiffs seek to assert in this case. Even if FIRREA did not mandate it, there is nevertheless an overwhelming balance in favor of transferring this case to the District of Columbia.

11. Federal jurisprudence concerning Section 1404(a) strongly supports transfer. For example, in *Captain Crab*, the court transferred an SEC enforcement action to the Southern District of Florida, where related private claims were pending, despite the SEC's protest that transfer would not be efficient because the government's action would not be consolidated with private cases already pending there. The court concluded that sound policy favored transfer even absent consolidation:

> Policy considerations favoring the litigation of related claims in one forum are the consolidation of pretrial discovery, the minimization of time and expense for parties and witnesses, and the reduction of inconsistent results.... [Even absent consolidation], the Florida court might, nonetheless, require discovery in the various actions to be conducted on a coordinated basis. Assignment of all the actions to a single judge may also result in substantial savings of judicial effort and reduction of likelihood of inconsistent results since similar legal issues are likely to be raised by motion in the various cases.

655 F. Supp. at 618. *Me-Wuk Indian Community of the Wilton Rancheria v. Kempthorne*, 246 F.R.D. 315 (D.D.C. 2007), is to the same effect. There the plaintiff sought recognition as a federally recognized Indian Tribe. *Id.* at 316. Another plaintiff group subsequently filed suit in the Northern District of California seeking similar relief, and it moved to intervene and to have the case transferred to the Northern District of California. *Id.* at 317. After granting intervention

under Rule 24, the court concluded that "the interests of justice favor transfer ... [in part because they] are 'better served when a case is transferred to where related actions are pending.'" *Id.* at 321-22 (quoting *Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48, 56 (D.D.C. 2000)).

12.   All of these factors point to transferring the case to the District of Columbia. First, just four of the nine plaintiffs can claim to be Texas residents, and two of those are corporations which also claim citizenship outside of Texas. *See Pet.* ¶¶1-9. Neither the FDIC, JPMC Bank, nor JPMC & Co. is a Texas resident. *See Affidavit of Anthony J. Horan attached hereto as Exhibit B; JPMC Bank's Articles of Association attached hereto as Exhibit C*; *Wachovia Bank v. Schmidt*, 546 U.S. 303, 307 (2006) ("a national bank, for § 1348 purposes, is a citizen of the State in which its main office, as set forth in its articles of association."). Moreover, according to plaintiffs, JPMC & Co. and JPMC Bank engaged in a years-long scheme, including with the FDIC, to take over WMB. But such a scheme could have emanated and been driven only from the defendants' corporate offices, which plaintiffs in part allege to be, and which are in fact, in New York and Ohio. *Id.* With respect to the real parties in interest, WMB was based in Nevada and WMI is a citizen of Washington State. *See Office of the Comptroller of the Currency Corporate Decision Number 2008-05* (listing WMB's main office Henderson, Nevada), *attached hereto as* Exhibit D; *Washington State Corporate Records* (listing WMI's state of incorporation) and *WMI's Voluntary Petition for Bankruptcy Cover Sheet* (listing WMI's principal place of business), *attached hereto as Exhibits E and F, respectively.* As a result, all of the "the operative facts of the dispute occur[red] outside of the plaintiff's chosen forum," and the only connection between the allegedly wrongful conduct and Texas is plaintiffs' choice to sue here. *Chapman*, 2009 WL 1024635, at *5 (internal quotations and citations omitted).

13.     WMI – the publicly traded bank holding company that owned WMB and the company of which certain plaintiffs were shareholders – has filed a lawsuit in the United States District Court for the District of Columbia in which it makes numerous allegations against the FDIC involving many assets of WMB and the FDIC's conduct in disposing of those assets. JPMC has moved to intervene in that action. *See Washington Mutual, Inc. v. FDIC*, No. 1:09-cv-00533(D.D.C. Filed March 20, 2009); *see also JPMC Bank's Motion to Intervene*.[4] WMI has also filed a bankruptcy motion to take discovery related to plaintiffs' claims here, and it has served document requests going to the heart of Plaintiffs' allegations. *See Debtor's Motion for an Order Pursuant to Bankruptcy Rule 2004 and Local Bankruptcy Rule 2004.1 Directing the Examination of JPMorgan Chase Bank, N.A.*, No. 08-12229 (MFW) (Bankr. D .Del. Filed May 1, 2009).[5]

14.     As in *Captain Crab* and *Me-Wuk*, WMI's already-pending lawsuit counsels heavily in favor of transfer. Plaintiffs' claims revolve around alleged acts of wrongdoing done to WMI and WMB. WMI's complaint against the FDIC asserts claims focused directly on the FDIC's transfer of assets to JPMC Bank. Discovery on WMI's and plaintiffs' claims will overlap, as likely will underlying substantive issues, motions and decisions.

15.     Transfer is even more appropriate than in *Captain Crab* and *Me-Wuk* because plaintiffs purport to be asserting claims that, to the extent they exist at all, do not belong to plaintiffs individually. Plaintiffs' claims focus on wrongs allegedly done to WMI and WMB and harm allegedly caused to all securities holders in proportion to their ownership interests in and/or lending to WMI and WMB. Plaintiffs lack individual, direct standing to pursue these claims. *See Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1039 (Del. 2004) (plaintiff's

---

[4] A copy of the complaint and JPMC Bank's Motion to Intervene in that action are attached as Exhibits G and H, respectively.

[5] Copies of the motion and document requests are attached as Exhibits I and J, respectively.

claimed injury "must be independent of any alleged injury to the corporation" and duty breached must be one owed to plaintiff rather than corporation). Thus, even if plaintiffs' claims had merit (and they do not), it is WMI who would need to decide if claims could or should be pursued, if at all, in the context of WMI's already-filed lawsuit. *See also* 28 U.S.C. § 1401 (venue for shareholder derivative actions is proper wherever the corporation could have sued the defendant).[6]

## III. CONCLUSION

16. For the foregoing reasons, as well as those presented in the Motion of Intervenor-Defendant FDIC-Receiver to Transfer or Dismiss for Improper Venue, the JPMC Defendants respectfully request that this Court transfer this action in its entirety to the United States District Court for the District of Columbia or, in the alternative, dismiss the action for improper venue, and grant the JPMC Defendants such other and further relief to which they may be justly entitled.

---

[6] Plaintiffs' attempt to avoid this common-sense logic by asserting that they were third-party beneficiaries to the confidentiality agreement in question. *See Plaintiffs' Original Petition* ¶ 96. But Plaintiffs have not alleged and could not prove as a matter of law that they were intended third-party beneficiaries of a confidentiality agreement between JPMC and WMI. There is a strong presumption against third-party beneficiary agreements. *MJR Corp. v. B & B Vending Co.*, 760 S.W.2d 4, 12 (Tex. App.—Dallas 1988, writ denied). Moreover, courts presume that contracting parties contracted only for themselves and not for the benefit of third parties, unless the obligation to the third party is clearly spelled out. *Corpus Christi Bank & Trust v. Smith*, 525 S.W.2d 501, 503 (Tex. 1975); *Brunswick Corp. v. Bush*, 829 S.W.2d 352, 355 (Tex. App.—Fort Worth 1992, no writ). Here, of course, were plaintiffs third-party beneficiaries of the alleged confidentiality agreement, then so, too, would every other WMI and WMB securities holder be, an outcome that the law will not support and that only shows that they lack standing in the first place.

Respectfully submitted,

By: _____
Glen M. Boudreaux
State Bar No. 02696500
Federal Id. No. 4168
**JACKSON WALKER L.L.P.**
1401 McKinney, Suite 1900
Houston, Texas 77010
(713) 752-4404
(713) 754-6712 - Fax
Email: gboudreaux@jw.com

ATTORNEY-IN-CHARGE FOR
DEFENDANTS JPMORGAN CHASE & CO.,
AND JPMORGAN CHASE BANK, N.A.

**OF COUNSEL:**
Maryellen Shea
State Bar No. 00793948
Federal Id. No. 33905
Chevazz Brown
State Bar No. 24059498
Federal Id. No. 946412
**JACKSON WALKER, L.L.P.**
1401 McKinney, Suite 1900
Houston, Texas 77010
(713) 752-4200
(713) 752-4221 – Fax
mshea@jw.com
cbrown@jw.com

## CERTIFICATE OF SERVICE

This is to certify that on this 11th day of May, 2009, a true and correct copy of the foregoing document was filed with the Court's ECF filing system, which will provide electronic notification of its filing to all counsel who have appeared in this action, including the following counsel of record:

Mr. Andrew J. Mytelka
Greer, Hertz & Adams, L.L.P.
One Moody Plaza, 18th Floor
Galveston, Texas 77550
Telephone: (409) 797-3200
Facsimile: (409) 766-6424

Mr. Jack O'Neill
Ms. Jessie A. Amos
DLA Piper LLP (US)
1000 Louisiana, Suite 2800
Houston, Texas 77002-5009

Mr. Aaron G. Fountain
DLA Piper LLP (US)
401 Congress Avenue, Suite 2500
Austin, Texas 78701-3799

_____
Glen M. Boudreaux