

**JACKSON WALKER L.L.P.**
ATTORNEYS & COUNSELORS

Maryellen Shea
713-752-4449 Direct Dial
(713) 754-6719 Direct Fax
mshea@jw.com

May 11, 2009

**VIA ELECTRONIC FILING**
Clerk of the Court
United State District Court
Southern District of Texas
Galveston Division
601 Rosenberg, Room 411
Galveston, TX 77550

    Re:    Cause No. 09cv044; *American National Insurance Company, et al. v. JPMorgan Chase & Co., and JPMorgan Chase Bank, National Association*; In the United States District Court for the Southern District of Texas, Galveston Division.

Dear Clerk of the Court:

    Attached for filing in the above-referenced matter is the JPMC Defendants' *Opposition to Plaintiffs' Motion for Remand*.

    By copy of this letter, together with a copy of the above document, we are notifying counsel for Plaintiffs of the filing of the same.

Sincerely,

Maryellen Shea

5509275v.1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| AMERICAN NATIONAL INSURANCE COMPANY, et al. | § § § § | |
| Plaintiffs, | § § | |
| vs. | § § | CIVIL ACTION NO. 3:09-CV-00044 |
| FDIC, as Receiver for Washington Mutual Bank, Henderson, Nevada, et al. | § § § | |
| Defendants. | § § § | |

## JPMORGAN CHASE DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND

Defendants JPMorgan Chase & Co. ("JPMC & Co.")[1] and JPMorgan Chase Bank, N.A. ("JPMC Bank"; collectively with JPMC & Co. sometimes referred to as the "JPMC Defendants") submit this opposition to Plaintiffs' Motion for Remand and would respectfully show as follows:

### I.   INTRODUCTION

1. Plaintiffs are a group of sophisticated insurance businesses that took a calculated risk in buying Washington Mutual debt and equity. They well knew at the time they invested – or they should have – that if their judgment proved faulty and their investments failed, their remedy would be to make claims in a receivership managed by the Federal Deposit Insurance Corporation or in bankruptcy proceedings.

2. As the Court well knows, Washington Mutual Bank did fail, and Washington Mutual, Inc., filed for bankruptcy. Plaintiffs hope to seek special treatment and thus avoid the

---

[1] JPMorgan Chase & Co. files this motion subject to its Special Appearance and without waiving its right to challenge personal jurisdiction in this matter.

JPMORGAN CHASE DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND
PAGE 1 OF 19

consequences of these events and the same fate as everyone else who lent to Washington Mutual Bank or Washington Mutual, Inc., or who invested in Washington Mutual, Inc. And so they have sued the FDIC-indemnified purchaser of WMB assets, JPMC Bank, and its parent, JPMC & Co. But because plaintiffs cannot thus blithely ignore the claims procedures required by federal law, the FDIC intervened in their case and removed it to this Court. The Plaintiffs now seek to remand the case mostly by asserting that the FDIC is not a proper party and that federal law does not control their claims. Plaintiffs are wrong on both counts. Their motion should be denied, as this case is properly in federal court, for each of the following, independently sufficient reasons:

3. ***First***, Plaintiffs claim that the FDIC is not a proper intervenor in the action and that the comprehensive Federal banking laws Congress passed to deal with bank failures in an efficient and uniform manner do not apply. Plaintiffs support their assertions with inapplicable and out-of-date cases and analysis. And while we mostly defer to the FDIC's opposition to the Plaintiffs' motion on these issues,[2] a number of specific points are worth making.

4. ***Second***, even if the FDIC were not a proper defendant, the plaintiffs' claims are completely intertwined with the federal banking laws such that the Court will not be able to determine whether plaintiffs' claims have merit without interpreting and applying those laws. Doing so raises a significant federal question that independently supports jurisdiction here.

5. ***Third***, the Court has diversity jurisdiction over this matter in any event. Though Plaintiffs have sued both JPMC Bank and JPMC & Co., only JPMC Bank is properly before this Court. The Court lacks personal jurisdiction over JPMC & Co., and it has simultaneously filed a motion to dismiss on that ground. For diversity purposes, JPMC Bank is a citizen only of Ohio,

---

[2] The Response of Intervenor-Defendant FDIC-Receiver in Opposition to Plaintiffs' Motion for Remand is incorporated herein by reference.

and JPMC & Co. is an improperly joined defendant, so complete diversity of citizenship exists between the properly parties.

## II. FACTS

6. Plaintiffs' lawsuit is spawned by the largest savings and loan failure in American history. On September 25, 2008, the Director of the Office of Thrift Supervision ("OTS") appointed the Federal Deposit Insurance Corporation (the "FDIC") as receiver for Washington Mutual Bank ("WMB"), and the FDIC took possession of WMB pursuant to section 1821 of title 12 of the United States Code. The FDIC then entered into a Purchase and Assumption Agreement, Whole Bank, (the "P&A Agreement") with JPMC Bank pursuant to which the FDIC sold or transferred to JPMC Bank substantially all of the assets and certain of the liabilities of WMB. *See the P&A Agreement attached hereto as Exhibit A.* The next day, September 26, 2008, Washington Mutual, Inc. ("WMI"), the bank holding company that owned WMB, filed a voluntary petition for bankruptcy under Chapter 11 of the Bankruptcy Code, which is pending in the United States Bankruptcy Court for the District of Delaware.

7. In accordance with 12 U.S.C. § 1821(d)(3)(B), on October 1, 2008, the FDIC published notice advising anyone with claims related to WMB's assets to present those claims by the December 30, 2008, bar date. WMI (and WMI Investment Corp.) asserted claims in the Receivership by filing a proof of claim on December 30, 2008. On January 23, 2009, the FDIC disallowed WMI's claims. WMI thereafter followed the process Congress mandated, and on March 20, 2009, filed an action against the FDIC in the United States District Court for the District of Columbia. (*See Washington Mutual, Inc., et al. v. FDIC*, No. No:09-cv-00533 (D.D.C. Filed March 20, 2009, *attached hereto as Exhibit B*). On March 24, 2009, JMPC Bank filed a motion to intervene in WMI's lawsuit against the FDIC to ensure that it is not divested of

the assets and interests purchased in good faith pursuant to the P&A Agreement. (*See JPMorgan Chase Bank, N.A.'s Motion to Intervene as Defendant attached hereto as Exhibit C*).

### III. DISCUSSION

#### A. Jurisdiction Is Proper Under FIRREA.

8. The FDIC had an absolute right to intervene in the state court proceeding under TEX. R. CIV. P. 60: "any party may intervene by filing a pleading, subject to being stricken out by the court for sufficient cause on the motion of any party." TEX. R. CIV. P. 60. Having done so, the FDIC properly removed the case as unquestionably based on federal questions: "all suits of a civil nature at common law or in equity to which the Corporation, in any capacity, is a party shall be deemed to arise under the laws of the United States." 12 U.S.C. § 1819(b)(2)(A) (emphasis added); *see also Heaton v. Monogram Credit Card Bank of Georgia*, 297 F.3d 416, 420 (5th Cir. 2002). At the time of removal, in short, the Court had jurisdiction over the case, and that should end the inquiry. *See Bank One Texas N.A. v. Morrison*, 26 F.3d 544, 547 (5th Cir. 1994) (the FDIC's subsequent dismissal from the case did not deprive the court of subject matter jurisdiction because jurisdiction is determined as of the time of removal and post-removal events will generally not deprive the court of jurisdiction).

9. The Federal Deposit Insurance Act, as amended by the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), eliminates any question as to whether the court has jurisdiction. *Triland Holdings v. Sunbelt Service Corp.*, 884 F.2d 205, 207 (5th Cir. 1989). Because the FDIC is a party, the entire case is deemed to arise under the laws of the United States. *Buchner v. FDIC*, 981 F.2d 816, 819 (5th Cir. 1992) (emphasis added); *See Village of Oakwood v. State Bank & Trust Co.*, 481 F.3d 364, 368 (6th Cir. 2007)("[u]nder § 1819(b)(2), if a case or controversy includes *any* claim to which the FDIC is a party, the

district court has jurisdiction over the entire case or controversy"). In fact, a district court "has no discretionary authority to remand a case over which it has subject matter jurisdiction." *Heaton*, 297 F.3d at 421 (citing *Buchner v. FDIC*, 981 F.2d 816, 817 (5th Cir. 1993)). And once the case is in federal court, FIRREA requires that it proceed only in the District of Columbia or, here, in Seattle. *See* 12 U.S.C. § 1821(d)(6).

10. Finally, both the FDIC and JPMC Bank are independently and inextricably linked to FIRREA by virtue of the P&A Agreement. Section 1823(c)(2)(A) authorizes the FDIC to provide assistance to JPMC Bank to facilitate the transaction contemplated. This assistance expressly includes granting indemnification to JPMC Bank. 12 U.S.C. § 1823(c)(2)(A); *See Exhibit A, page 1*. The FDIC is further authorized pursuant to 12 U.S.C. § 1823(c)(4)(A) to do what it determines necessary to meet its obligation to provide coverage for the insured deposits. This contemplates immediate and long-term obligations, including any direct or contingent liability for future payment by the FDIC as long as the FDIC believes it is the least costly of all possible methods for meeting its obligations. Among the FDIC's tools to fulfill its obligations is its ability to grant indemnity to the assuming bank. 12 U.S.C. § 1823(c)(2)(A)(iii) authorizes in the FDIC

> to guarantee such other insured depository institution or the company which controls or will acquire control of such other insured depository institution against loss by reason of such insured institution's merging or consolidating with or assuming the liabilities and purchasing the assets of such insured depository institution or by reason of such company acquiring control of such insured depository institution.

Such protections for an assuming bank are necessary and consistent with the goals and policies of FIRREA, which include promoting stability, economic recovery, and increased public confidence. *See Trembling Prairie Land Co. v. Vespoor*, 145 F.3d 686, 690 (5th Cir. 1998). But

for protections like these, "an assuming bank would rarely be inclined to enter a P&A agreement with the FDIC knowing that it could be taking on unidentified liability of undefined dimensions that could arise at some uncertain date in the future." *Village of Oakwood v. State Bank & Trust Co.*, 519 F. Supp. 2d 730, 738 (N.D. Ohio 2007), *aff'd* in 539 F.3d 373, 386 (6th Cir. 2008).

11.   Plaintiffs attempt to avoid these statutory directives by asserting worn and rejected arguments: (1) they did not sue the FDIC and are not seeking recovery from the Receivership; (2) a neighboring district court concluded 17 years ago that the FDIC is not a proper party to cases like these; and (3) the FDIC acknowledged in *Henrichs* that the Plaintiffs' position is correct. Plaintiffs are wrong on all counts.

### 1. Plaintiffs Cannot Hide From FIRREA By Avoiding The FDIC Or The FDIC's Claim Process.

12.   Plaintiffs assert the FDIC has chosen to intervene solely for the fun of luring the Court into a "federal question snare." Plaintiffs rely on the rejected theory that they did not sue the FDIC, but have only sued the JPMC Defendants and only based upon state law causes of action. Plaintiffs misread their own allegations and misunderstand the law. Their Original Petition reveals allegations that the JPMC Defendants conspired with or coerced the FDIC to sell assets of WMB to JPMC Bank, all as part of a scheme to strip Washington Mutual of valuable assets "without compensating the company or its stakeholders." *Plaintiffs' Original Petition* ¶ 30. More specifically, Plaintiffs claim:

- The FDIC sold the crown jewels of WMB to JPMC Bank at a fire sale price. ¶21

- The FDIC worked with JPMC Bank to design bidding parameters that would suit JPMC Bank's needs and would rule out other potential bidders. ¶25

- The FDIC participated in a plan with JPMC Bank through which federal regulators would seize WMB and certain valuable assets would be passed to JPMC Bank. ¶47

- From September 4 to September 25, 2008, the FDIC had discussions with JPMC Bank regarding seizure of WMB and JPMC Bank's purchase of WMB's valuable assets and the stripping away of WMB's liabilities. ¶47
- The FDIC pressured the OTS to seize WMB. ¶48
- The FDIC created a phony bidding process through which it sought bids from select bidders for the sale of WMB's assets. ¶62
- The agreement culminated in the FDIC signing with JPMC Bank a "Whole Bank Purchase and Assumption" agreement whereby the FDIC, as receiver, sold WMB assets to JPMC Bank for $1.9 billion. ¶67
- WMB, through the FDIC as receiver for WMB, has failed and refused to meet its obligations under the bond contracts. ¶91

In short, the Plaintiffs' claims relate inextricably to acts or omissions of the FDIC as receiver for WMB. But for the FDIC's asset sale to JPMC Bank, and the FDIC's alleged conduct leading up to that sale, Plaintiffs would have no claims whatsoever.

13. Plaintiffs' attempts to evade FIRREA, despite these and similar allegations, have been consistently rejected. *See Brady Dev. Co. v. Resolution Trust Corp.*, 14 F.3d 998, 1002-03 (4th Cir. 1994); *Village of Oakwood v. State Bank & Trust Co.*, 519 F. Supp. 2d 730, 738 (N.D. Ohio 2007), *aff'd* in 539 F.3d 373, 386 (6th Cir. 2008). In *Village of Oakwood*, for example, uninsured depositor plaintiffs sued the assuming bank in state court, alleging a variety of state law theories, including constructive trust and aiding and abetting a breach of fiduciary duty. After the FDIC intervened and removed, the plaintiffs argued that their claims were not claims against a depository institution for which the FDIC was receiver under 12 U.S.C. §1821(d)(6). *See Village of Oakwood*, 519 F. Supp. 2d at 733. The district court held that the exhaustion requirement of FIRREA applied to the plaintiffs' claims because they "clearly relate to an 'act or omission of ... the [FDIC] as receiver' and the uninsured depositors should have sought their administrative remedies available under 12 U.S.C. §1821(d)(6)(citing 12 U.S.C.§ 1821(d)(6)(A) and § 1821(13)(D)(ii)). Examining the important policy considerations underlying FIRREA, the

district court stated that to "permit claimants to avoid the provisions of (d)(6) and (d)(13) by bringing claims against the assuming bank – would encourage the very litigation FIRREA aimed to avoid." *Id.* at 738 (citing *Brady Dev. Co.*, 14 F.3d at 1006 - permitting a claimant to pursue a claim despite its failure to exhaust remedies "would thwart FIRREA's purposes and permit creditors to evade the comprehensive administrative claims procedures envisioned by the statute").

14.     The Sixth Circuit affirmed the district court's opinion in *Village of Oakwood*, stating that the plaintiffs' "naked assertion appears to be an argument that because the Uninsured Depositors have sued only [assuming bank], rather than the FDIC, their claims fall completely outside of the framework of FIRREA's administrative process.  The problem with this novel argument is that all of their claims against [assuming bank] are directly related to acts or omissions of the FDIC as the receiver of [the failed bank]." *Id.* at 386.  Despite Plaintiffs' superficial and erroneous attempt to distinguish the *Village of Oakwood* facts, *see Plaintiffs' Response to FDIC Motion to Transfer at 5-6*, this is a case on all fours.  The claims asserted against JPMC Bank in this lawsuit fall squarely under FIRREA (regardless of whether or not Plaintiffs brought causes of action directly against the FDIC). *Id.*

    **2.**    **Plaintiffs' Cases Are Inapposite.**

15.     Plaintiffs seize upon three cases – all opinions authored by Judge McBryde in the Northern District of Texas – in an attempt to demonstrate that the FDIC is an "interloper" to this action. *See Hickey v. NCNB Texas Nat. Bank*, 763 F. Supp. 896 (N.D. Tex. 1991) (McBryde, J.); *Bank One v. Elms*, 764 F. Supp. 85 (N.D. Tex. 1991) (McBryde, J.); *Team Bank v. Long*, 145 F.R.D. 69 (N.D. Tex. 1992) (McBryde, J.).  All three cases are easily distinguishable on their face, and they have little relevance now given current Fifth Circuit authority.

16.     First, in *Elms* and *Long*, the acquiring banks had filed the lawsuit in question, in state court, seeking to recover on assets purchased from the FDIC as receiver for a failed institution. *See Elms*, 764 F. Supp. at 86; *Long*, 145 F.R.D. at 70. When the defendants counterclaimed, it is no wonder that the Court rejected the plaintiffs' efforts to hide behind the FDIC and sent the cases back whence the banks had originally filed them. Here, of course, the JPMC Defendants had not first sued the plaintiffs in state court and are not trying to recover from the plaintiffs and at the same time avoid related counterclaims. *Hickey* is even more inapplicable. After the Court had disposed of all claims, the FDIC filed a motion for summary judgment asking that plaintiff recover nothing on his claims against the FDIC. *Hickey*, 763 F. Supp. at 897. Perturbed by the FDIC's insistence on a ruling where none was needed, the court struck it as an intervening party. *See id.* Prompted by the FDIC's application for reinstatement, the court voiced its frustration that "there has never been an interest of FDIC-Receiver at stake in this action" and the FDIC "would be left to 'shadowbox' with a non-opponent over a non-existent purse," which would place it as the "sole party to litigation in which no claims are now being made." *Id.* at 898-899. Notably, none of the cases before Judge McBryde involved allegations of wrongdoing against the FDIC, none dealt with claims by creditors of a failed bank against the buyer of the failed bank's assets, and none involve the substantial federal issues inherent in adjudicating plaintiffs' claims in the context of FIRREA and its jurisdictional bar of 12 U.S.C. § 1821(d)(13)(D).

17.     Second, to the extent that Judge McBryde's opinions suggest that potential indemnity obligations (within a purchase and assumption agreement) owed by the FDIC to an assuming bank cannot create a basis for intervention by the FDIC, this is contrary to Fifth Circuit law. *See, e.g., First Gibralter Bank fsb v. Bradley*, 98 F.3d 1338, 1996 WL 556852 at *4 & n.9

(5th Cir. 1996) (unpublished op.) (the FDIC's obligation to indemnify the assuming bank constituted sufficient financial interest in the litigation to justify proper party status); *Pernie Bailey Drilling Co. v. FDIC*, 905 F.2d 78, 80 (5th Cir. 1990) (finding that the FDIC had sufficient interest in the litigation based in part on the FDIC's potential obligations of indemnity within a P&A).

18.   The Fifth Circuit also recognizes that the FDIC is a proper party based upon the broad policy considerations that the FDIC has in "protecting the proper and consistent application of the Congressionally designed framework to ensure the safety and integrity of the federal deposit insurance system." *Heaton*, 297 F.3d at 425. Such policy considerations are also consistent with the District Court's opinion in *Village of Oakwood*. *See* 519 F. Supp. 2d at 738 ("an assuming bank would rarely be inclined to enter a P&A agreement with the FDIC knowing that it could be taking on unidentified liability of undefined dimensions that could arise at some uncertain date in the future").

### 3.   *Henrich* Is Inapposite.

19.   Plaintiffs cherry-pick language from a brief filed by the FDIC in *Henrichs v. Valley View Development* in an attempt to support their erroneous proposition that FIRREA's requirement to exhaust the administrative claims process does not apply to assets in the possession of an assignee. (*See Plaintiffs' Motion for Remand, at 12-13.*) *Henrichs* has no application or similarity to the case before this Court. In *Henrichs*, the Petitioners sued the FDIC seeking declaratory and injunctive relief from an adverse *final* judgment in a case involving a title dispute to which the FDIC had not even been a party. Eleven years had passed since the FDIC had transferred the disputed assets, and the FDIC's receivership had *ended* long before the Henrichs made their claim with the FDIC. *Henrichs* was decided based - not upon FIRREA - but

upon the Rooker-Feldman doctrine and Anti-Injunction Act. *See* 474 F.3d 609, 613-14, 616 (9th Cir. 2007).

B.  **Even If FIRREA Did Not Apply, The Court Still Would Have Federal Question Jurisdiction.**

20.  Even assuming that the FDIC had not intervened in this lawsuit, federal-question jurisdiction would nevertheless exist under well-recognized precedent. *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 125 S. Ct. 2363, 162 L. Ed. 2d 257 (2005) (finding federal-question jurisdiction over state-law claim where claim turned on construction of federal statute). The general federal-question statute, 28 U.S.C. § 1331, confers jurisdiction over any action "arising under the Constitution, laws or treaties of the United States." Typically, jurisdiction of this kind is invoked by a cause of action created by federal law. As *Grable* recognizes, however, "in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." 545 U.S. at 312 (determination of quiet title claim depended upon determination of tax law issue); *see also Air Measurement Technologies, Inc. v. Akin Gump Strauss Hauer & Feld, L.L.P.*, 504 F.3d 1262 (Fed. Cir. 2007) (legal malpractice claim depended upon determination of patent law question). The existence of a federally created cause of action is thus not a prerequisite to jurisdiction pursuant to 28 U.S.C. § 1331 or removing a case pursuant to 28 U.S.C. 1441(a). *See Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 27-28, 103 S. Ct. 2841, 77 L. Ed. 2d 420 (1983) (noting federal jurisdiction where plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law).

21.  In determining whether a state-law claim invokes federal jurisdiction under *Grable*, "the question is: does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any

congressionally approved balance of federal and state judicial responsibilities." 545 U.S. at 314. Stated differently, federal-question jurisdiction exists where (1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities. *Singh v. Duane Morris LLP*, 538 F.3d 334, 338 (5th Cir. 2008). In this case, Plaintiffs purport to allege only state-law claims; yet, the ultimate success or failure of Plaintiffs' claims turns on a necessary interpretation of FIRREA.

### 1.  Resolving The Federal Issue Is Necessary To Resolve Plaintiffs' Claims.

22.　Plaintiffs' state-court Petition supplies ample factual allegations to call into question whether Plaintiffs' claims are appropriately administrative claims under 12 U.S.C. §1821(d)(6). FIRREA established a comprehensive administrative scheme through which "claims" (1) against a failed bank, (2) seeking payment from or a determination of rights with respect to assets of the failed bank, or (3) relating to any act or omission of the FDIC as receiver must travel. *See Meliezer v. Resolution Trust Co.*, 952 F.2d 879, 883 (5th Cir. 1992). Plaintiffs' substantive allegations substantially implicate the conduct of the FDIC in carrying out its statutory function pursuant to 12 U.S.C. § 1821(d) and bringing about the injury Plaintiffs' allege. Further, as bond-holders of WMB, Plaintiffs are creditors and thus fall within the class of persons for which the administrative claims process was intended. *See* 12 U.S.C. §1821(d)(3)(B) ("The receiver, in any case involving the liquidation or winding up of the affairs of a closed depository institution, shall ... promptly publish a notice *to the depository institution's creditors to present their claims*") (emphasis added).

23.　To the extent Plaintiffs' claims are administrative claims for purposes of FIRREA, their claims properly should be presented through FIRREA's administrative claims

process, in which case no state court has a role. The significance of this federal issue justifies resort to the "experience, solicitude, and hope of uniformity" that only the federal forum can provide. 545 U.S. at 312.

### 2. A Federal Issue Is Actually Disputed.

24. Proof that this federal issue is one actually disputed is exemplified in *Village of Oakwood Bank v. State Bank & Trust Co.*, 539 F.3d 373, 388 (6th Cir. 2008). As discussed above, the plaintiffs in *Oakwood* brought state-law claims against the purchaser of assets of a failed bank. Like here, the plaintiffs' substantive allegations substantially involved acts or omissions of the FDIC. At issue was whether all of plaintiffs' claims were administrative claims for purposes of FIRREA. Significantly, the *Oakwood* court found that Plaintiffs' claims had to go through FIRREA's administrative process. In dispute here, then, is the same set of federal questions under FIRREA.

### 3. The Federal Issue Is Substantial.

25. "Substantiality" requires not only a contested issue, but one "indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Grable*, 545 U.S. at 313. Passed in the wake of a financial crisis in the late 1980s, FIRREA was intended to promote stability, economic recovery, and increased public confidence in the banking and savings and loan industries. *See Trembling Prairie Land Co. v. Vespoor*, 145 F.3d 686, 690 (5th Cir. 1998). To effectuate this purpose, FIRREA established a comprehensive administrative scheme to facilitate the prompt and efficient resolution of claims resulting from failed institutions without resort to litigation. *See Meliezer v. Resolution Trust Co.*, 952 F.2d 879, 883 (5th Cir. 1992). If Plaintiffs' claims are not within FIRREA's reach, "the very litigation that FIRREA aimed to avoid" would likely result. *See Village of Oakwood v. State Bank & Trust*

*Co.*, 519 F. Supp. 2d 730, 738 (W.D. Ohio), *aff'd* in 539 F.3d 373 (6th Cir. 2008). Resolution of this federal issue bears significant implications, for WMB is not the first and will not be the last bank to fail. Particularly in a time of national fiscal crisis, ensuring uniformity and predictability in the wake of a failed bank furthers the National interest in promoting stability and public confidence in the banking system.

  **4. This Court's exercise of jurisdiction will preserve the status quo of federal and state judicial responsibilities.**

  26. State courts infrequently have occasion to interpret and determine rights under federal law. *See* 28 U.S.C. § 1331. It follows that if construction of FIRREA were left to the sound discretion of a federal court, the danger envisioned in *Grable*, *i.e.*, disturbing the balance of federal and state judicial responsibilities, would be a non-issue. Conversely, if the job were left to a state court, the danger would be realized.

  27. By its terms FIRREA precludes the possibility that a state court will ever exercise jurisdiction to review administrative claims under FIRREA's comprehensive framework. If a party exhausts the administrative claims process, that party may only seek review of the FDIC-Receiver's determination in federal district court in the District of Columbia or in the district where the depository's principal place of business is located. 12 U.S.C. § 1821(d)(6)(A). Retaining jurisdiction here thus will preserve the division of responsibility Congress intended when it included these jurisdictional limitations in FIRREA.

**C. The Only Proper Parties To This Case Are of Diverse Citizenship Such That This Court Has Subject Matter Jurisdiction Pursuant to 28 U.S.C. Section 1332.**

  28. In addition to federal question jurisdiction, this Court has subject matter jurisdiction over this cause in accordance with 28 U.S.C. § 1332 because the only *properly joined* defendant – JPMC Bank – is diverse from all plaintiffs. Defendants pled in their Notice

of Removal that the amount in controversy exceeds $75,000. Notice of Removal at ¶11. Plaintiffs do not contest that the first element of 28 U.S.C. § 1332 is satisfied. (*See Motion for Remand at p. 23.*) As a result, the only issue in dispute is whether the properly joined parties are diverse. They are: JPMC & Co. is not a properly joined defendant, and JPMC Bank is a citizen of Ohio.

1.  **JPMC & Co. Was Improperly Joined, And Its Citizenship Is Therefore Irrelevant For Purposes of the Diversity Analysis.**

29. Ordinarily, a federal court does not have diversity jurisdiction over a matter unless there is complete diversity between all of the plaintiffs on one hand and all of the defendants on the other. *Mas v. Perry*, 489 F.2d 1396, 1398-99 (5th Cir. 1974). The rule is otherwise, however, if one of the parties has been improperly joined in the case so as to defeat this complete diversity. "The doctrine of fraudulent joinder speaks to those situations ... in which one can say no possibility exists that the plaintiff would be able to establish a viable cause of action against the alien defendant in state court." *Nolan v. Boeing Co.*, 736 F. Supp. 120, 121 (E.D. La. 1990). And a plaintiff can have no possibility of establishing a claim against a non-diverse defendant either on the merits or because the state court lacks jurisdiction over the non-diverse defendant. In *Villar v. Crowley Maritime Corp.*, 780 F. Supp. 1467 (S.D. Tex. 1992), *aff'd*, 990 F.2d 1489 (5th Cir. 1993), for example, the defendants removed on diversity grounds a state court wrongful death action. *Id.* at 1472. One of the defendants was not diverse from the plaintiffs, however, and the plaintiffs therefore moved to remand. The defendants asserted in response, and the court concluded, that the court lacked personal jurisdiction over the non-diverse defendant, which had been improperly joined as a result, and that diversity existed once the improperly joined defendant was dismissed. *Id.* at 1473, 1481; *see also Nolan*, 736 F. Supp. at 127 (denying motion to remand because the court lacked personal jurisdiction over the non-

diverse defendant and granting motion to dismiss on forum non-conveniens grounds); *Martino v. Viaco Aerea Riograndense, S.A.*, No. 90-1883, 1991 WL 13886 (E.D. La. Jan. 25, 1991) (denying motion to remand after dismissing non-diverse defendant for lack of personal jurisdiction).

30. Here, the Court cannot exercise personal jurisdiction over JPMC & Co. As a result, the plaintiffs have no hope of establishing their claims against it in Texas and, once it is dismissed, its citizenship will be irrelevant for purposes of determining whether there is complete diversity between the plaintiffs and the sole remaining defendant, JPMC Bank.[3]

### 2.  JPMC Bank Is A Citizen of Ohio.

31. JPMC Bank is solely a citizen of the State of Ohio. JPMC Bank is a national banking association; pursuant to 28 U.S.C. § 1348, national banking associations are "deemed citizens of the States in which they are respectively located." Only three years ago, the Supreme Court held that "a national bank, for § 1348 purposes, is a citizen of the State in which its main office, as set forth in its articles of association." *Wachovia Bank v. Schmidt*, 546 U.S. 303, 307 (2006). Looking beyond the state designated in its articles of association would have dire consequences, as "the access of a federally chartered bank to a federal forum would be drastically curtailed in comparison to the access afforded state banks and other state-incorporated entities." *Id.* Congress did not intend federal courts to consider a national bank a citizen of any other state than the state of its main office. *Id.*

---

[3] Even if the court could exercise personal jurisdiction over JPMC & Co., JPMC & Co. still would have been improperly joined in accordance with the doctrine enunciated in *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir.2004) (en banc). Where a "mere theoretical possibility of recovery under local law" exists, joinder of that defendant is improper. *Id.* at n.9 (citing *Badon v. RJR Nabisco, Inc.*, 236 F.3d 282, 286 n. 4. (5th Cir.2000)). Plaintiffs' claim against JPMC & Co. presents only a theoretical possibility of relief because none of Plaintiffs' claims is addressed to conduct of JPMC & Co., as distinct from JPMC Bank.

32. Readily accessible sources related to the determinative question of JPMC Bank's citizenship all point to Ohio as the state of JPMC Bank's main office. JPMC Bank's Articles of Association stated that its main office is Columbus, Ohio. (*See Articles of Association attached hereto as Exhibit D.*) The Office of the Comptroller of the Currency's official national bank certificate confirms that JPMC Bank's main office is located in Columbus, Ohio, as do other documents from the OCC and the FDIC. (*See OCC's Certificate of Corporate Existence and Fiduciary Powers attached hereto as Exhibit E.*) Plaintiffs allege that JPMC Bank is a New York citizen and claim that JPMC Bank is estopped from denying that citizenship. Plaintiffs' supposed "reliance" on state-filed documents is immaterial because 28 U.S.C. § 1348 dictates that a national bank's citizenship is determined by reference to its articles of association. Rather than looking to irrelevant documents, Plaintiffs could have readily accessed the information about JPMC Bank's main office from the OCC's National Bank List, available by link on the front page of the OCC's web site. (*See "National Bank List" records that JPMorgan Chase Bank, National Association's location is Columbus, Ohio attached here to as Exhibit F at p. 14, and also available at* http://www.occ.treas.gov/foia/Name_St_City.pdf).[4] Defendant JPMC Bank is an Ohio citizen.

## IV.   CONCLUSION

33. Because this lawsuit is clearly governed by FIRREA's comprehensive scheme, the FDIC is a properly intervening party and, as such, this case was properly removed to federal court pursuant to 12 U.S.C § 1819(b)(2)(B) and 28 U.S.C. § 1441(b). Even if it were otherwise, the Court still would have both federal question and diversity jurisdiction.

---

[4] All of the documents mentioned above were available, if not readily, by a Freedom of Information Act request. As a result, even if the outdated state-filed documents were relevant, they may not be used as a ground for estoppel where "the other party has equal access to the [material] facts." *Storms v. Tuck*, 579 S.W.2d 447, 452 & n.3 (Tex. 1979) (citing *Barfield v. Howard M. Smith Company of Amarillo*, 426 S.W.2d 834 (Tex.1968)).

For the foregoing reasons, the JPMC Defendants respectfully request that this Court deny Plaintiff's Motion to Remand, and grant the JPMC Defendants such other and further relief to which they may be justly entitled.

Respectfully submitted,

By: _____
Glen M. Boudreaux
State Bar No. 02696500
Federal Id. No. 4168
**JACKSON WALKER L.L.P.**
1401 McKinney, Suite 1900
Houston, Texas 77010
(713) 752-4404
(713) 754-6712 - Fax
Email: gboudreaux@jw.com

ATTORNEY-IN-CHARGE FOR
DEFENDANTS JPMORGAN CHASE & CO.,
AND JPMORGAN CHASE BANK, N.A.

OF COUNSEL:
Maryellen Shea
State Bar No.00793948
Federal Id. No. 33905
Chevazz Brown
State Bar No. 24059498
Federal Id. No. 946412
**JACKSON WALKER, L.L.P.**
1401 McKinney, Suite 1900
Houston, Texas 77010
(713) 752-4200
(713) 752-4221 – Fax
mshea@jw.com
cbrown@jw.com

## CERTIFICATE OF SERVICE

This is to certify that on this 11th day of May, 2009, a true and correct copy of the foregoing document was filed with the Court's ECF filing system, which will provide electronic notification of its filing to all counsel who have appeared in this action, including the following counsel of record:

Mr. Andrew J. Mytelka
Greer, Hertz & Adams, L.L.P.
One Moody Plaza, 18th Floor
Galveston, Texas 77550
Telephone: (409) 797-3200
Facsimile: (409) 766-6424

Mr. Jack O'Neill
Ms. Jessie A. Amos
DLA Piper LLP (US)
1000 Louisiana, Suite 2800
Houston, Texas 77002-5009

Mr. Aaron G. Fountain
DLA Piper LLP (US)
401 Congress Avenue, Suite 2500
Austin, Texas 78701-3799

_____
Glen M. Boudreaux