**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| **AMERICAN NATIONAL INSURANCE** | § | |
| **COMPANY, et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **JP MORGAN CHASE & CO.** | § | |
| **and JP MORGAN CHASE BANK,** | § | |
| **NATIONAL ASSOCIATION,** | § | **CIVIL ACTION NO. 3:09-cv-00044** |
| | § | |
| **Defendants,** | § | |
| | § | |
| **and** | § | |
| | § | |
| **FEDERAL DEPOSIT INSURANCE** | § | |
| **CORPORATION,** | § | |
| | § | |
| **Intervenor-Defendant.** | § | |

**RESPONSE OF INTERVENOR-DEFENDANT FDIC-RECEIVER**
**IN OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND**

DLA PIPER LLP (US)
Edward John "Jack" O'Neill, Jr.
1000 Louisiana Street, Suite 2809
Houston, Texas 77002
Telephone:  (713) 425-8400
Facsimile:  (713) 425-8401
jack.oneill@dlapiper.com

ATTORNEYS FOR DEFENDANT IN
INTERVENTION, THE  FEDERAL DEPOSIT
INSURANCE CORPORATION, AS RECEIVER
FOR WASHINGTON MUTUAL BANK,
HENDERSON, NEVADA

Table of Contents

Page

Table of Authorities ......................................................................................................... ii

INTRODUCTION .............................................................................................................. 1

BACKGROUND ................................................................................................................ 4

    A.   Plaintiffs' Allegations .......................................................................................... 4

    B.   Intervention and Removal.................................................................................... 7

ARGUMENT ..................................................................................................................... 7

THE MOTION FOR REMAND SHOULD BE DENIED ................................................. 7

    I.   The FDIC-Receiver's Intervention in State Court and Removal of this
       Action Were Proper ............................................................................................ 7

    II.   The FDIC-Receiver Meets the Criteria for Intervention as of Right Under
       Federal Rule 24(a)............................................................................................... 8

        A.   The FDIC-Receiver's Intervention Was Timely........................................ 9

        B.   The FDIC-Receiver Has Substantial Interests in the Subject Matter
           of this Action............................................................................................. 9

           1.   Enforcement of Federal Banking Law and Preventing a
              Chilling Effect on Potential Buyers of Failed Bank Assets
              in the Future .............................................................................. 10

           2.   Protecting the FDIC-Receiver's Interests Under Its
              Indemnification Agreement ........................................................ 15

        C.   Disposition of this Action Could Impair or Impede the Rights of
           the FDIC-Receiver, and JPMC Bank Will Not Protect Those
           Interests .................................................................................................... 16

    III.   In the Alternative, the FDIC-Receiver Should Be Granted Permissive
        Intervention Under Federal Rule 24(b)............................................................... 18

CONCLUSION................................................................................................................. 19

## Table of Authorities

### Cases

**Page**

*American First Fed., Inc. v. Lake Forest Park, Inc.*,
198 F.3d 1259 (11th Cir. 1999) ....................................................14

*Arends v. Eurobank & Tr. Co.*,
146 F.R.D. 42 (D.P.R. 1993) ...........................................2, 10, 16

*Armstrong v. Capshaw, Goss & Bowers, LLP*,
404 F.3d 933 (5th Cir. 2005) ...........................................................8

*Bank One Texas N.A. v. Elms*,
764 F. Supp. 85 (N.D. Tex. 1991) ...................................7, 14, 15-16

*Bank One Texas N.A. v. Morrison*,
26 F.3d 544 (5th Cir. 1994)) ........................................................14

*Brook v. Brook*,
865 S.W.2d 166 (Tex. App.—Corpus Christi 1993), *aff'd* 881 S.W.2d 297
(Tex. 1994)........................................................................................7

*Buchner v. F.D.I.C.*,
981 F.2d 816 (5th Cir. 1993) ............................................................1

*Ceres Gulf v. Cooper*,
957 F.2d 1199 (5th Cir. 1992) ........................................................16

*F.D.I.C. v. McFarland*,
243 F.3d 876 (5th Cir. 2001) ..........................................................13

*First Gibraltar Bank fsb v. Bradley*,
98 F.3d 1338, 1996 WL 556852 (5th Cir. 1996) ...........................3, 15

*Heaton v. Monogram Credit Card Bank of Georgia*,
297 F.3d 416 (5th Cir. 2002) ................................................. *passim*

*Henrichs v. Valley View Dev.*,
474 F.3d 609 (9th Cir. 2007) ...................................................13, 14

*Hickey v. NCNB Tex. Nat'l Bank*,
763 F. Supp. 896 (N.D. Tex. 1991) ................................................14

*Hindes v. F.D.I.C.*,
C.A. No. 94-2355, 1995 WL 534248 (E.D. Pa. Sept. 6, 1995), *aff'd* 137 F.3d 148
(3d Cir. 1998)..................................................................................12

*National Union Fire Ins. v. City Sav.*,
    28 F.3d 376 (3d Cir. 1994)........................................................................14

*Newby v. Enron Corp.*,
    443 F.3d 416 (5th Cir. 2006) ..................................................................18

*Pernie Bailey Drilling Co. v. F.D.I.C.*,
    905 F.2d 78 (5th Cir. 1990) ....................................................................15

*R.T.C. v. Midwest Fed. Sav. Bank*,
    36 F.3d 785 (9th Cir. 1993) ....................................................................14

*Raine v. F.D.I.C.*,
    C.A. No. W-92-CA-025, 1992 WL 565268 (W.D. Tex. Sept. 9, 1992)..................15

*Rosa v. R.T.C.*,
    938 F.2d 383 (3d Cir. 1991).................................................................11, 12

*Sahni v. American Diversified*,
    83 F.3d 1054 (9th Cir. 1996) ................................................................10, 16

*Sierra Club v. City of San Antonio*,
    115 F.3d 311 (5th Cir. 1997) ..................................................................16

*Sierra Club v. Espy*,
    18 F.3d 1202 (5th Cir. 1994) ....................................................................9

*Team Bank v. Barfield*,
    145 F.R.D. 69 (N.D. Tex. 1992) ........................................................ 14, 15-16

*Village of Oakwood v. State Bank & Tr. Co.*,
    539 F.3d 373 (6th Cir. 2008) .................................................................2, 13

*Volges v. R.T.C.*,
    32 F.3d 50 (2d Cir. 1994) ......................................................................11

## **Statutes and Rules**

12 U.S.C. § 1819(b)(2) .....................................................................1, 7, 8

12 U.S.C. § 1821(d)(5) ........................................................................11

12 U.S.C. § 1821(d)(6) ........................................................................3, 13

12 U.S.C. § 1821(d)(13)(D) ............................................................... *passim*

12 U.S.C. § 1821 (d)(13)(E) ...................................................................12

12 U.S.C. § 1821(j) ............................................................................................................11

Fed. R. Civ. P. 24(a) ................................................................................................ 3, 8-17

Fed. R. Civ. P. 24(b) ................................................................................................ 4, 17-18

Tex. R. Civ. P. 60 ............................................................................................................1, 7

**RESPONSE OF INTERVENOR-DEFENDANT FDIC-RECEIVER
IN OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND**

Intervenor-Defendant the Federal Deposit Insurance Corporation, as Receiver for Washington Mutual Bank (the "FDIC-Receiver"), respectfully submits this Response in Opposition to Plaintiffs' Motion for Remand.

## INTRODUCTION

Plaintiffs' Motion for Remand rests upon a challenge to the FDIC-Receiver's intervention in Plaintiffs' underlying state court action against Defendants JPMorgan Chase Bank, N.A. ("JPMC Bank") and its holding company JP Morgan Chase & Co. ("JPMC"). According to Plaintiffs, the FDIC-Receiver "improperly intervened in the case when "no ground for intervention exists . . ." and as a result, Plaintiffs assert, no federal jurisdiction exists. Motion for Remand at 1, 10, 26. However, the FDIC-Receiver's intervention (and subsequent removal) were entirely proper, and Plaintiffs' remand motion must therefore should be denied.

Plaintiffs do not dispute that the FDIC-Receiver properly intervened in Plaintiffs' state court action in accordance with Texas state procedural rules. *See* Tex. R. Civ. P. 60. Nor do Plaintiffs dispute that the FDIC-Receiver had a right to remove this action once it had intervened because, under its enabling statute, all suits in which the FDIC is a party in any capacity "shall be deemed to arise under the laws of the United States." 12 U.S.C. § 1819(b)(2)(A); *see Buchner v. F.D.I.C.*, 981 F.2d 816, 819 (5th Cir. 1993). Plaintiffs also do not argue that the FDIC-Receiver's intervention and removal were untimely.

Instead, Plaintiffs mistakenly contend that the FDIC-Receiver's intervention was improper, and even "manipulative," because Plaintiffs tactically elected not to name the FDIC-Receiver as a defendant in their state court Petition and have not asserted claims directly against the FDIC-Receiver in the Petition. Federal banking law, however, expressly bars "any claim or

action . . . seeking a determination of rights with respect to the assets of any" failed depository institution or "any claim relating to any act or omission of" either a failed institution or the FDIC as its receiver.   12 U.S.C. §§ 1812(d)(13)(D)(i), (ii).   This jurisdictional bar is part of a larger statutory scheme that is designed to allow the FDIC to discharge its core mission – the protection of depositors in failed banks and the stability of the national banking system – without being subjected to the distraction and expense of litigation by bank creditors and other claimants outside of the receivership claims process under the Federal Deposit Insurance Act, as amended by the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA").

Protection against this distraction and expense is especially important where, as here, a claimant seeks recovery for its losses from the buyer of a failed bank's assets instead of from the FDIC itself.   As the Sixth Circuit recently observed in rejecting the argument made by Plaintiffs here, to "permit[] claimants to avoid [the jurisdictional bar] by bringing claims against the assuming bank . . . would encourage the very litigation that FIRREA aimed to avoid."   *Village of Oakwood v. State Bank & Tr. Co.*, 539 F.3d 373, 386 (6th Cir. 2008); *see, e.g., Arends v. Eurobank & Tr. Co.*, 146 F.R.D. 42, 44-49 (D.P.R. 1993) (denying motion to remand action against assuming bank after FDIC intervention and removal).

There can be no doubt that circumvention of the FDIC claims process is precisely what Plaintiffs are attempting to do in the present case.   Plaintiffs admit in their Motion for Remand that the loss in value of their holdings of securities issued by Washington Mutual Bank ("WMB") and its holding company Washington Mutual, Inc. ("WMI") arose "[b]ecause of the seizure and sale" of WMB by the Office of Thrift Supervision ("OTS") and the FDIC-Receiver, respectively.   *See* Motion for Remand at 4 (citing Pet., ¶¶ 70, 71).[1]   But for the OTS order

---

[1] Citations to "Pet., ¶ ___" refer to paragraphs in Plaintiffs' Original Petition.

closing WMB and appointing the FDIC as Receiver, Plaintiffs would be unable to allege that their WMB bonds "are worthless," Pet., ¶ 71, the very harm for which they seek recovery from the Defendants in this action, *see* Pet., ¶¶ 90, 92, 93, 99, 102. But for the FDIC-Receiver's sale of WMB to JPMC Bank, allegedly "at a fire sale price," Pet., ¶ 21, the FDIC-Receiver might now have more funds to pay Plaintiffs with respect to their receivership claims. *See* Pl. Mot. at 2 ("Plaintiffs sue Defendants because, among other things, Defendants purposefully and tortiously created a situation wherein the FDIC would have to sell WMB to them at an unreasonably low price."). Under federal law, these arguments must be directed to the FDIC-Receiver in the receivership claims process, *see* 12 U.S.C. § 1821(d)(13)(D), and only if those receivership claims are disallowed may a claimant then proceed to federal district court, *see* 12 U.S.C. § 1821(d)(6)(A).

The FDIC-Receiver clearly satisfies the standard for intervention as of right under Federal Rule of Civil Procedure 24(a). As the Fifth Circuit has recognized, the FDIC, as an intervenor, has a broad "interest in protecting the proper and consistent application of the Congressionally designed framework to ensure the safety and soundness of the federal deposit insurance system." *Heaton v. Monogram Credit Card Bank of Georgia*, 297 F.3d 416, 424 (5th Cir. 2002). That powerful general interest is even stronger in this case, both because of the chilling effect that allowing Plaintiffs' claims to proceed against JPMC Bank would have on future sales of failed bank assets and because the action could subject the FDIC-Receiver to potential liability to JPMC Bank under the indemnification provision of its purchase and assumption agreement. *See, e.g., First Gibraltar Bank fsb v. Bradley*, 98 F.3d 1338, 1996 WL 556852, at *4 & n.9 (5th Cir. 1996) (*per curiam*) ("Given the agency's obligation to indemnify FGB, the acquiring bank, FDIC had a concrete financial interest in the litigation that would

justify its status as a party."). Even if the FDIC-Receiver did not meet the standard for intervention as of right, however (which it clearly does), permissive intervention would be appropriate under Federal Rule 24(b). Plaintiffs' challenges to the FDIC-Receiver's intervention are thus without merit, and Plaintiffs' Motion for Remand should therefore be denied.

## **BACKGROUND**

### A.    **Plaintiffs' Allegations**[2]

In their underlying Petition, Plaintiffs allege that they are insurance companies that own shares of common stock of WMI and bonds issued by WMI or WMB. Pet., ¶¶ 29, 72-75, 80-86. Any harm allegedly suffered by Plaintiffs arises solely from the allegedly lost value of these securities. *See* Pet., ¶ 99 ("As a result, the value of Plaintiffs' common stock was rendered worthless, and the contractual rights underlying the Bonds are of no value."); *see also id.*, ¶¶ 70, 71, 91, 92, 103.

WMB was a savings and loan association that was a wholly owned subsidiary of WMI, a publicly traded thrift holding company. Pet., ¶ 33. WMB and WMI were both subject to regulation and examination by the OTS and the FDIC, among other state and federal agencies. Pet., ¶ 34.

Plaintiffs allege that in or around 2004, JPMC's future chief executive officer targeted WMI for acquisition. Pet., ¶¶ 35, 36. JPMC thereafter allegedly placed insiders in this "targeted company" by sending a number of senior and junior executives "to begin 'new chapters' in their lives" as employees of WMI or WMB. Pet., ¶ 37. According to Plaintiffs' allegations, from 2005 to 2007 JPMC gathered non-public information about WMI and WMB from these insiders

---

[2] The well-pleaded allegations of the Petition are assumed to be true solely for purposes of this Response to Plaintiffs' Motion for Remand. The FDIC-Receiver reserves all of its defenses, including challenging the accuracy of Plaintiffs' factual allegations.

and "from government regulators and monetary policymakers," using this information to "build a 'fortress balance sheet,' from which it could later acquire Washington Mutual." Pet., ¶ 40.

In April 2008, JPMC allegedly made a public proposal for a stock merger with WMI at a value of $8 per share, which WMI declined. Pet., ¶ 42. Plaintiffs allege "upon information and belief" that JPMC thereafter began to exert pressure on the OTS, FDIC and other regulators" with the "goal of closing Washington Mutual in a seamless transfer of the valuable, cherry-picked, assets, while leaving the liabilities, to JPMC." Pet., ¶ 43.

Continuing their allegations "upon information and belief," Plaintiffs allege that on or about September 4, 2008 "JPMC and the FDIC agreed to a plan whereby federal regulators would seize WMB and certain valuable assets would be passed to JPMC, and certain liabilities excluded. From September 4, 2008 to September 25, 2008, JPMC and FDIC continued discussions regarding seizure of WMB and JPMC's purchase of WMB's valuable assets and stripping away of WMB's liabilities." Pet., ¶ 47.

According to Plaintiffs' Petition, on September 12, 2008, a news report stated that JPMC was in advanced merger talks with WMI "at the highest levels of both companies." Pet., ¶ 52. The Petition alleges that JPMC's participation in these discussions was a "sham and a pretext designed to gain access [to] Washington Mutual's confidential financial information." Pet., ¶ 53. In connection with those negotiations, JPMC allegedly entered into a confidentiality agreement "which it had no intention of abiding by," and was granted access to confidential information of WMI and WMB. Pet., ¶ 54.

Plaintiffs allege, again "[u]pon information and belief," that JPMC disclosed such information "as it saw fit to news media, government regulators, and investors, in such a way as promoted its scheme." Pet., ¶ 58. According to the Petition, "[b]etween September 15, 2008 and

September 25, 2008, WMB customers withdrew $16.7 billion in deposits, thus achieving JPMC's goal of creating a bank run." Pet., ¶ 60.

On September 25, 2008, the OTS issued its order closing WMB and appointing the FDIC-Receiver as the Receiver of WMB. Pet., ¶ 64. Later that evening, the FDIC-Receiver, the FDIC in its corporate capacity and JPMC Bank entered into a Purchase and Assumption Agreement, Whole Bank, dated as of September 25, 2008 (the "P&A Agreement").[3] Pet., ¶ 67. Under the P&A Agreement, JPMC acquired substantially all of WMB's assets for $1.9 billion, but "did not acquire obligations to unsecured debt holders such as the Plaintiffs . . ." Pet., ¶ 67. WMI filed a Chapter 11 bankruptcy petition the next day, on September 26, 2008. Pet., ¶ 70.

Plaintiffs allege that their WMB bonds "are subject to liquidation as part of the FDIC receivership" and that "[u]pon information and belief, these Bonds are worthless." Pet., ¶ 71. Plaintiffs claim that "WMB, through the FDIC as receiver for WMB, has failed and refused to meet its obligations under the bond contracts," and that JPMC and JPMC Bank knew "that their actions in causing the seizure and sale out of the FDIC receivership would interfere with Plaintiffs' rights under the bond contracts." Pet., ¶¶ 90, 91. Plaintiffs also allege that due to its bankruptcy, WMI "lacks sufficient income-producing assets to meet its contractually mandated debt obligations to the Plaintiffs who own WMI bonds." Pet., ¶ 70.

Plaintiffs assert claims against JPMC and JPMC Bank for tortious interference with Plaintiffs' bond contracts with WMI and WMB, Pet., ¶¶ 88-93, for breach of the confidentiality agreement between JPMC and WMI, Pet., ¶¶ 94-99, and for unjust enrichment, Pet., ¶¶ 100-03.

---

[3] A copy of the P&A Agreement is attached as Exhibit 1 to the accompanying Declaration of Edward John "Jack" O'Neill, Jr. (the "O'Neill Declaration").

B.    **Intervention and Removal**

Plaintiffs filed their Original Petition on or around February 24, 2009 in the 122nd District Court of Galveston County, Texas.  On March 25, 2009, the FDIC-Receiver served and filed its Plea in Intervention in the state court action, thereby becoming a party to the action as an intervenor-defendant.  On the same day, the FDIC-Receiver timely filed its Notice of Removal. Plaintiffs filed their Motion for Remand on April 21, 2009.

## ARGUMENT

### THE MOTION FOR REMAND SHOULD BE DENIED

Plaintiffs' challenge to the FDIC-Receiver's intervention is without merit, and their Motion for Remand should be denied.

### I.    The FDIC-Receiver's Intervention in State Court and Removal of this Action Were Proper

Plaintiffs acknowledge that the FDIC-Receiver intervened before this action was removed from state court, and they do not claim that the FDIC-Receiver failed to meet the requirements for intervention in the state court proceedings.  Under the Texas Rules of Civil Procedure, "[o]nce a plea in intervention is filed, the intervenor becomes a party for all purposes unless the trial court strikes the intervention."  *Brook v. Brook*, 865 S.W.2d 166, 172 (Tex. App.—Corpus Christi 1993), *aff'd* 881 S.W.2d 297 (Tex. 1994)*; see* Tex. R. Civ. P. 60. "[T]here is no question that under state law, [the FDIC-Receiver] had the procedural right to intervene and did so in a procedurally correct manner."  *Bank One, Texas, N.A. v. Elms*, 764 F. Supp. 85, 87 (N.D. Tex. 1991) (cited by Plaintiffs).

Once the FDIC-Receiver is a party, the entire action is "deemed to arise under the laws of the United States," 12 U.S.C. § 1819(b)(2)(A), conferring "instant subject matter jurisdiction over the case."  *Heaton v. Monogram Credit Card Bank*, 297 F.3d 416, 426 (5th Cir. 2002).

Once it had intervened, therefore, the FDIC-Receiver was entitled to remove the action to federal court, which it did the same day.  *See* 12 U.S.C. § 1819(b)(2)(B).

Plaintiffs do not challenge any of the foregoing in their remand motion.  In fact, they implicitly concede it.  *See* Motion for Remand at 18 ("Once the FDIC is dismissed from this case, federal jurisdiction is eliminated and this lawsuit should be remanded").

## II.     The FDIC-Receiver Meets the Criteria for Intervention as of Right Under Federal Rule 24(a)

The FDIC-Receiver clearly satisfies the requirements for intervention as of right under Federal Rule 24(a).  *See Armstrong v. Capshaw, Goss & Bowers, LLP*, 404 F.3d 933, 936-37 (5th Cir. 2005) (challenge to intervention after removal from Texas state court evaluated with reference to federal requirements).  To intervene as a matter of right, an intervenor must meet the following requirements:

> (1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; (4) the applicant's interest must be inadequately represented by the existing parties to the suit.

*Armstrong*, 404 F.3d at 937 (emphasis and citation omitted); *see* Fed. R. Civ. P. 24(a)(2).[4]

---

[4] Federal Rule 24(a)(2) provides:

(a)     Intervention of Right.  On timely motion, the court must permit anyone to intervene who:

> *               *               *

(2)     claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2).

### A.    The FDIC-Receiver's Intervention Was Timely

There can be no serious dispute that the FDIC-Receiver's intervention was timely, having been accomplished fewer than 30 days after Plaintiffs first purported to serve the Citation and Petition on JPMC or JPMC Bank and only a few days after those Defendants filed their initial responses to the Petition.  *See* Executed Service of Process Citations, JPMorgan Chase Bank's Original Answer, and JP Morgan Chase & Co's Special Appearance (all attached to Index of Documents Filed with Notice of Removal).  No other activity had occurred, and the FDIC-Receiver's intervention at that early stage in the litigation caused no delay in the proceedings. *See Heaton*, 297 F.3d at 422-23 ("[T]he requirement of timeliness is not a tool of retribution to punish the tardy would-be intervenor, but rather a guard against prejudicing the original parties by failure to apply sooner.") (citation omitted).

While application of timeliness factors is probably unnecessary given the promptness of the FDIC-Receiver's intervention in the state court proceedings, each of those factors supports the FDIC-Receiver's intervention:  (1) the FDIC-Receiver intervened within 30 days of learning of the suit; (2) no party was prejudiced by the timing of the FDIC-Receiver's intervention; (3) the FDIC-Receiver would be prejudiced if its intervention were stricken; and (4) no unusual circumstances are implicated with respect to the timing of intervention here.  *Heaton*, 297 F.3d at 423 (citing *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994) (discussing timeliness factors)).

### B.    The FDIC-Receiver Has Substantial Interests in the Subject Matter of this Action

The FDIC-Receiver has significant interests in this action that warrant intervention as a matter of right.  The decisions relied upon by Plaintiffs in support of remand are inapposite and cannot be reconciled with governing law.

### 1.    Enforcement of Federal Banking Law and Preventing a Chilling Effect on Potential Buyers of Failed Bank Assets in the Future

To the extent that Plaintiffs have asserted claims against JPMC or JPMC Bank related to actions of the FDIC-Receiver, or touching upon the loss of value of their WMB bonds, such claims represent an impermissible end-run around the receivership claims process.  They are therefore barred under the Federal Deposit Insurance Act, as amended, *inter alia*, by FIRREA. *See* 12 U.S.C. §§ 1821(d)(13)(D)(i) & (ii).

The FDIC-Receiver has a clear and recognized interest in enforcing its governing statute. *See Heaton*, 297 F.3d at 424 (FDIC had interest supporting intervention as of right given its "broader interest in protecting the proper and consistent application of the Congressionally designed framework to ensure the safety and integrity of the federal deposit insurance system."). The enforcement of that statutory regime is especially important here to prevent the chilling effect that impermissible suits such as this one could have in deterring potential buyers of failed bank assets in the future.  *See Arends*, 146 F.R.D. at 48 ("If a P&A Agreement comes under attack, whether by local or state authorities or other interested parties, FDIC naturally must do what it can to avoid precedents that may hinder future agreements regarding bank transfers."); *see also Sahni v. American Diversified Partners*, 83 F.3d 1054, 1057 (9th Cir. 1996) ("The FDIC's power to liquidate the assets of a failed institution is critical to its ability to rescue failed institutions and the FDIC would suffer injury if this power was constrained.").

"Congress has granted the FDIC as receiver express statutory authority to dispose of receivership assets, thereby reducing the losses borne by federal taxpayers when federally insured financial institutions . . . fail."  *Sahni*, 83 F.3d at 1058.  In enacting FIRREA, Congress explained that the broad authority granted to the FDIC in its receivership capacity was "designed to give the FDIC power to take all actions necessary to resolve the problems posed by a financial

institution in default." *Id.* (quoting H.R. Rep. No. 54(I), 101st Cong., 1st Sess. 2, *reprinted in* 1989 U.S.C.C.A.N. 86, 126).

This statutory authority includes the responsibility to determine and resolve claims against a failed financial institution by creditors such as the Plaintiffs. *See* 12 U.S.C. § 1821(d)(5). The receivership claims process is exclusive. Thus, 12 U.S.C. § 1821(d)(13)(D)(i) provides that "no court shall have jurisdiction over . . . any claim or action for payment from, or any action *seeking a determination of rights with respect to the assets of*" any failed financial institution. (Emphasis added). Similarly, section 1821(d)(13)(D)(ii) bars "any claim relating to any act or omission of such institution or the Corporation as receiver." 12 U.S.C. § 1821(d)(13)(D)(ii).[5] A third provision bars any court from taking "any action . . . to restrain or affect the exercise of powers or functions of the Corporation as a conservator or receiver." 12 U.S.C. § 1821(j).

These provisions are "part of a broader scheme to allow the [FDIC] expeditiously to wind up the affairs of defunct savings and loan institutions without judicial interference." *Volges v. R.T.C.*, 32 F.3d 50, 52 (2d Cir. 1994); *see also Rosa v. R.T.C.*, 938 F.2d 383, 396 (3d Cir. 1991) (primary purpose of exclusive claims procedures is to allow a receiver to quickly and efficiently

---

[5] Section 1821(d)(13)(D) provides:

(D)    Limitation on judicial review

Except as otherwise provided in this subsection, no court shall have jurisdiction over –

    (i)    any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or

    (ii)    any claim relating to any act or omission of such institution or the Corporation as receiver.

resolve claims against a failed institution without resorting to litigation) (citing H.R. Rep. No. 101-54(I) at 418-19, *reprinted in* 1989 U.S.C.C.A.N. at 214-15). The statutory framework also serves to protect the FDIC's deposit insurance fund and thereby "'minimize taxpayer expense in resolving failed commercial banks.'" *Hindes v. F.D.I.C.*, C.A. No. 94-2355, 1995 WL 534248, at *3 (E.D. Pa. Sept. 6, 1995), *aff'd* 137 F.3d 148 (3d Cir. 1998) (internal citation omitted) (denying implied private right of action under section 1821(d)(13)(E) where to find such a right would subject FDIC "to persistent litigation from shareholders" in contravention of purposes of statute).

Plaintiffs argue that their action does not involve "claims" against the WMB receivership, Motion for Remand at 8, 12; however, they make no attempt to distinguish the provisions of section 1821(d)(13)(D) that prohibit lawsuits "seeking a determination of rights with respect to the assets" of a failed bank or those that relate "to any act or omission" of the FDIC-Receiver. *See* 12 U.S.C. §§ 1821(d)(13)(D)(i), (ii). Their action against JPMC clearly runs afoul of both of these provisions.[6]

Plaintiffs' central allegation is that JPMC Bank acquired WMB's assets from the FDIC-Receiver at a "fire sale price" for the "severely undervalued sum of $1.9 billion." Pet., ¶ 21. According to Plaintiffs' Petition, JPMC's scheme resulted in it paying the FDIC-Receiver a "below-market price" for WMB, Pet, ¶ 92, "without properly compensating the company or its stakeholders, including the Plaintiffs," Pet., ¶ 30. Unquestionably, these allegations seek to determine "rights with respect to the assets" of WMB, namely, the assets that Plaintiffs contend

---

12 U.S.C. § 1821(d)(13)(D).

[6] The FDIC-Receiver's disallowance of claims filed against the receivership by WMB's former holding company, WMI, is irrelevant. *See* Motion for Remand at 13. WMI did not purport to assert claims against the FDIC-Receiver on behalf of Plaintiffs or any other WMB bondholders.

were sold by the FDIC-Receiver at a "below-market price."  Similarly, there can be no real dispute that Plaintiffs' allegations directly place in issue the "acts or omissions" of the FDIC-Receiver.  Under either prong, the Petition runs afoul of the jurisdictional bar of section 1821(d)(13)(D).

Nor is there merit to Plaintiffs' suggestion that the jurisdictional bar is not applicable because they have not asserted claims directly against the FDIC-Receiver.  Indeed, the Sixth Circuit has expressly rejected this argument, recognizing that to "permit[] claimants to avoid [the] provisions of [12 U.S.C. § 1821](d)(6) and (d)(13) by bringing claims against the assuming bank . . . would encourage the very litigation that FIRREA aimed to avoid."  *Village of Oakwood*, 539 F.3d at 386.

In *Village of Oakwood*, as in this case, creditors of a failed bank sued the assuming bank under a purchase and assumption agreement for losses they allegedly sustained as a result of their bank's failure.  Finding that the claims against the assuming bank were subject to FIRREA's exclusive claims process, the district court granted summary judgment, and the Sixth Circuit affirmed.  In doing so, the appellate court considered and rejected the very argument advanced by Plaintiffs here – that the claims against State Bank were not "claims against a depository institution for which the [FDIC was] receiver," concluding that "[t]he problem with this novel argument is that all of their claims against State Bank are directly related to acts or omissions of the FDIC as receiver of Oakwood."  *Id.* at 386.  The same conclusion applies here.

Plaintiffs seek to avoid the jurisdictional bar by citing cases that have concluded that FIRREA's requirement to exhaust the administrative claims process does not apply to assets that are in the possession of an assignee of the FDIC as receiver.  *See* Motion for Remand at 12-13 (citing, *inter alia, F.D.I.C. v. McFarland*, 243 F.3d 876, 887 (5th Cir. 2001); *Henrichs v. Valley*

*View Dev.*, 474 F.3d 609, 614-15 (9th Cir. 2007)).   The principle at issue in those decisions, however, has no application here, where Plaintiffs' allegations unquestionably (1) seek a determination of rights with respect to assets of the WMB receivership and (2) relate to acts or omissions of the FDIC-Receiver, in contravention of the jurisdictional bar of sections 1821(d)(13)(D)(i) and (ii).   The same could not be said of either *McFarland* or *Henrichs*.[7]

Finally, Plaintiffs erroneously rely on three 1991 and 1992 decisions by federal District Judge John McBryde construing the FDIC's intervention in state court actions shortly after the enactment of FIRREA.   *See Team Bank v. Barfield*, 145 F.R.D. 69 (N.D. Tex. 1992); *Bank One, Texas, N.A. v. Elms*, 764 F. Supp. 85 (N.D. Tex. 1991); *Hickey v. NCNB Texas Nat'l Bank*, 763 F. Supp. 896 (N.D. Tex. 1991).   In all three decisions, the district court criticized the FDIC for intervening in and removing state court actions concerning promissory notes that had been assumed from failed banks under purchase and assumption agreements.   None of the opinions addressed the jurisdictional bar of section 1821(d)(13)(D), none considered whether the claims at issue sought a determination with respect to assets of a receivership, and none involved allegations, as in this case, that concerned alleged acts or omissions of the Receiver.   Whatever

---

[7] The other decisions cited by Plaintiffs are simply inapposite.  *National Union Fire Ins. v. City Sav.*, 28 F.3d 376 (3d Cir. 1994), held that insurance companies were barred by section 1821(d)(13)(D) from bringing a declaratory judgment action but were not prohibited from asserting affirmative defenses.  *R.T.C. v. Midwest Fed. Sav. Bank*, 36 F.3d 785 (9th Cir. 1993), and *American First Fed., Inc. v. Lake Forest Park, Inc.*, 198 F.3d 1259 (11th Cir. 1999), also concerned the ability to assert affirmative defenses.  The FDIC brief in opposition to certiorari in *Henrichs* does not help Plaintiffs here, because Plaintiffs' claims in this case relate to acts or omission of the FDIC-Receiver and therefore squarely fall within the jurisdictional bar of section 1821(d)(13)(D)(ii), which was not at issue in *Henrichs*.  Likewise, Plaintiffs' suggestion that this action be severed and a portion remanded to state court overlooks that their allegations relating to an "act or omission" of the FDIC-Receiver pertain to all of their causes of action and that once the FDIC is a party, federal subject matter jurisdiction exists over the action.  *See Bank One Texas N.A. v. Morrison*, 26 F.3d 544, 547 (3d Cir. 1994).

continuing vitality the decisions might have, all are clearly distinguishable from the present case on their facts.

## 2. Protecting the FDIC-Receiver's Interests Under Its Indemnification Agreement

The FDIC-Receiver also has a significant interest in this case as a potential indemnitor of JPMC Bank under the P&A Agreement. Under section 12.1(a) of that agreement (subject to the conditions set forth in that and other provisions), the FDIC-Receiver agreed to indemnify JPMC Bank and hold it harmless against any and all costs, losses, liabilities and expenses, *inter alia*, for claims against JPMC Bank by WMB's pre-receivership creditors or, in certain circumstances, by shareholders of WMB's holding company, WMI. P&A Agreement, § 12.1(a) (O'Neill Decl., Ex. 1). On March 10, 2009, JPMC Bank sent a letter notifying the FDIC-Receiver of its intention to seek indemnification with respect to this action. *See* O'Neill Decl., Ex. 2.

The Fifth Circuit has recognized the FDIC's interest in participating as a party in actions based on similar indemnification provisions. *See First Gibraltar Bank fsb v. Bradley*, 98 F.3d 1338, 1996 WL 556852, at *4 & n.9 (5th Cir. 1996) (*per curiam*) ("Given the agency's obligation to indemnify FGB, the acquiring bank, FDIC had a concrete financial interest in the litigation that would justify its status as a party."); *Pernie Bailey Drilling Co. v. F.D.I.C.*, 905 F.2d 78, 80 (5th Cir. 1990) ("[t]he designation of FDIC as a proper party stems in part from its obligation to indemnify NCNB under the terms of the P&A Agreement"); *see also Raine v. F.D.I.C.*, C.A. No. W-92-CA-025, 1992 WL 565268 at *1 (W.D. Tex. Sept. 9, 1992) (noting FDIC's interest arising from indemnification provision in P&A agreement).

Plaintiffs again cite the district court decisions in *Team Bank* and *Bank One* in opposing the FDIC-Receiver's intervention based on its indemnification obligations. The court in those cases concluded that any potential exposure for the FDIC under the indemnification provisions at

issue was highly contingent and unlikely given the posture of the cases. *See Bank One*, 764 F. Supp. at 89 ("[T]his indemnification obligation can never be a reality in this action because, as a matter of law, Elms has no right of recovery from Bank One on the counterclaim he has asserted . . . ."); *Team Bank*, 145 F.R.D. at 72 ("There is nothing in the record to indicate that Team Bank can be held liable for any claim as to which FDIC/receiver would have ultimate liability.").

Once again, this action is different. As stated above, JPMC Bank has notified the FDIC-Receiver of its intention to seek indemnification for this action under the P&A Agreement. While the FDIC-Receiver reserves all of its rights with respect to that notice, unlike the decisions that Plaintiffs rely on, Plaintiffs have not argued that liability of the FDIC-Receiver under this indemnification provision "can never be a reality" here.

### C. Disposition of This Action Could Impair or Impede the Rights of the FDIC-Receiver, and JPMC Bank Will Not Protect Those Interests

For the same reasons that the FDIC-Receiver has a substantial interest in the defense of this action, its absence from the action could impair or impede that interest. The FDIC-Receiver cannot rely on a private defendant, JPMC Bank, to defend the agency's unique public mission. *See Arends*, 146 F.R.D. at 48*; see also Sahni*, 83 F.3d at 1057 ("[R]escission of the HUD partnership sales would curtail the ability of the FDIC to fulfill its statutory mandate because rescission would have a chilling effect on the FDIC's future sales of . . . assets."). The Fifth Circuit has held that protection of such a broad public interest by itself justifies intervention as of right by the FDIC and other government entities. *See Heaton*, 297 F.3d at 424; *see also Sierra Club v. City of San Antonio*, 115 F.3d 311, 315 (5th Cir. 1997) (regulatory and other governmental interests of State of Texas justified intervention in water rights suit by

environmental advocacy group); *Ceres Gulf v. Cooper*, 957 F.2d 1199, 1201 (5th Cir. 1992) (intervention in insurance action granted for director of workers compensation program).

Nor will JPMC Bank adequately represent the interests of the FDIC-Receiver if it is not a party. The Fifth Circuit recognizes that a proposed intervenor's burden as to this element is "minimal." *Heaton*, 297 F.3d at 425. Even if the standard were strict, the FDIC-Receiver more than satisfies this prong. As a private party, JPMC Bank has no interest in ensuring the uniform enforcement of the statutory and regulatory scheme that governs and protects the FDIC when it acts as receiver of failed depository institutions. JPMC Bank would not necessarily advocate for an interpretation of that statutory scheme that is consistent with the FDIC-Receiver's interests. As both a regulated national bank and a potential purchaser of failed bank assets from the FDIC in the future, JPMC Bank's interests in this regard could be antagonistic to those of the FDIC-Receiver in numerous ways that are yet unforeseen.

Moreover, JPMC Bank has stated its intention to seek indemnification from the FDIC-Receiver for any liability it might face in this action, creating an obvious adversity of interests between it and the FDIC-Receiver. JPMC Bank's interest is to successfully avoid liability to Plaintiffs in this action, but this aim could be achieved through a claim for indemnification by the FDIC-Receiver under the P&A Agreement as well as through its defense of this action.

III.    **In the Alternative, the FDIC-Receiver Should Be Granted Permissive Intervention Under Federal Rule 24(b)**

The FDIC-Receiver respectfully submits that it is entitled to intervene as of right for the reasons set forth above.  Even if the Court disagrees, however, the Court should permit the FDIC-Receiver to intervene under Federal Rule 24(b).[8]

For the reasons already stated, Plaintiffs' claims against JPMC and JPMC Bank in this action implicate a statute administered by the FDIC, including specifically the jurisdictional bar set forth in 12 U.S.C. § 1821(d)(13)(D), and also concern the P&A Agreement, which is an "agreement . . . made" by the FDIC-Receiver under its governing statute.  Similarly, the FDIC-

---

[8] Federal Rule 24(b) provides:

(b)     Permissive intervention.

    (1)     In General.  On timely motion, the court may permit anyone to intervene who:

        *              *              *

        (B)     has a claim or defense that shares with the main action a common question of law or fact.

    (2)     By a Government Officer or Agency.  On timely motion, the court may permit a federal or state governmental officer or agency to intervene if a party's claim or defense is based on:

        (A)     a statute or executive order administered by the officer or agency; or

        (B)     any regulation, order, requirement, or agreement issued or made under the statute or executive order.

    (3)     Delay or prejudice.  In exercising its discretion, the Court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

Fed. R. Civ. P. 24(b).  This Court has wide discretion to permit a motion to intervene under Rule 24(b).  *See Newby v. Enron Corp.*, 443 F.3d 416, 424 (5th Cir. 2006).

Receiver's arguments relating to its statutory framework constitute a defense in common with the main action, namely, whether Plaintiffs' claims against JPMC and JPMC Bank are actionable to the extent they are based on Plaintiffs' WMB bonds.  Finally, as previously discussed, no party will be delayed or prejudiced by permitting the FDIC-Receiver to intervene.

## **CONCLUSION**

For the foregoing reasons, Intervenor-Defendant FDIC-Receiver respectfully submits that its intervention and removal of this action were proper and that Plaintiffs' Motion for Remand should be denied.

Dated:  Houston, Texas
        May 11, 2009

                                  Respectfully submitted,

                                  DLA PIPER LLP (US)


                                  By:   /s  Jack O'Neill
                                      Edward John "Jack" O'Neill, Jr.
                                      Attorney-in-Charge
                                      Texas State Bar No. 15288500
                                      Southern District of Texas Bar No. 3696
                                      1000 Louisiana Street, Suite 2800
                                      Houston, Texas 77002
                                      Telephone:  (713) 425-8400
                                      Facsimile:  (713) 425-8401
                                      jack.oneill@dlapiper.com

                                      Aaron G. Fountain
                                      Texas State Bar No. 24050619
                                      Southern District of Texas Bar No. 960354
                                      401 South Congress Avenue, Suite 2500
                                      Austin, Texas 78701
                                      Telephone:  (512) 457-7000
                                      Facsimile:  (512) 457-7001
                                      aaron.fountain@dlapiper.com

                                      ATTORNEYS FOR DEFENDANT IN
                                      INTERVENTION, THE  FEDERAL DEPOSIT
                                      INSURANCE CORPORATION, AS RECEIVER
                                      FOR WASHINGTON MUTUAL BANK,
                                      HENDERSON, NEVADA

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this 11th day of May 2009, the foregoing Response of Intervenor-Defendant FDIC-Receiver in Opposition to Plaintiffs' Motion for Remand, together with the accompanying Declaration of Edward John "Jack" O'Neill, Jr., with exhibits, was filed with the Court's ECF filing system, which will provide electronic notification of its filing to all counsel who have appeared in this action.


_____/s/  Jack O'Neill_____
Edward John "Jack" O'Neill, Jr.