UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| AMERICAN NATIONAL INSURANCE COMPANY, et al,<br>    Plaintiffs,<br><br>vs.<br><br>JPMORGAN CHASE & CO., et al.<br>    Defendants | § § § § § § § § § | CIVIL ACTION NO. 3:09-CV-00044 |

## REPLY OF PLAINTIFFS IN SUPPORT OF
## MOTION FOR REMAND [Instr. No. 10]

Plaintiffs, American National Insurance Company, et al. ("Plaintiffs"), submit the following Reply in accordance with this Court's Order dated May 21, 2009.

### INTRODUCTION

In their responses to Plaintiffs' Motion for Remand, Defendants and the FDIC (collectively, "Respondents") make a number of factual and legal errors. First, Respondents misleadingly assert that there is significance to the FDIC's intervention in state court under Texas rules of civil procedure. Second, Respondents misconstrue the allegations in Plaintiffs' Petition in order to fit a mistaken theory that federal banking law applies to this case. Third, Respondents misconstrue the statutes and caselaw relating to Financial Institutions Reform Recovery and Enforcement Act of 1989 ("FIRREA"). Fourth, Respondents omit relevant portions of an agreement between Defendants and the FDIC, which demonstrates that no possibility exists for indemnity in this case. Fifth, Respondents err in their contention that the allegations in Plaintiffs' lawsuit "implicate significant federal issues." Sixth, Defendants fail to meet their burden to establish diversity jurisdiction.

1

As discussed herein and in Plaintiffs' Motion for Remand, the FDIC cannot establish grounds to intervene under Federal Rule of Civil Procedure 24 and should be dismissed pursuant to Federal Rule of Civil Procedure 21. The Defendants' arguments regarding diversity jurisdiction are without merit. Thus, without the FDIC's meritless intervention in this case, no basis to exert federal jurisdiction exists. The case should be remanded to the District Court of Galveston County.

## DISCUSSION

1. **The FDIC's Intervention Under Texas Rules Of Civil Procedure Has No Significance Regarding Intervention Under Federal Rules**

Respondents make much of the fact that the FDIC "properly intervened in Plaintiffs' state court action in accordance with Texas state procedural rules."[1] Texas procedural rules allow "[a]ny party [to] intervene by filing a pleading, subject to being stricken out by the court for sufficient cause on the motion of any party." TEX. R. CIV. P. 60. In this case, the FDIC intervened and then removed the case two days later, before the Plaintiffs' had an opportunity to challenge the intervention. Nevertheless, Defendants contend that "At the time of removal, in short, the Court had jurisdiction over the case, and that should end the inquiry."[2] This is not the law.

The FDIC's intervention under Texas state rules has no bearing on whether the FDIC's intervention was proper, since intervention is judged according to federal standards, as set forth in Federal Rule of Civil Procedure 24. *See Bank One, Tex., Nat'l Assoc. v. Elms*, 764 F.Supp. 85, 88 (N.D.Tex.1991) ("[i]n determining whether [an] intervention should be stricken or dismissed,

---

[1] *See Response of Intervenor-Defendant FDIC-Receiver in Opposition to Plaintiffs' Motion for Remand* ("FDIC's Response"), Doc. 17, p. 6.

[2] *See JPMorgan Chase Defendants' Opposition to Plaintiffs'' Motion for Remand* ("Defendants' Response"), Doc. 16, p. 5.

2

the court will be guided by federal law"). *See Armstrong v. Capshaw, Goss & Bowers, L.L.P.* 404 F3d 933, 936-37 (5th Cir. 2005) (propriety of intervention in state court determined under Federal Rule of Civil Procedure 24 after removal, citing *Bank One, Tex., Nat'l Assoc. v. Elms*).

Plaintiffs have not had the opportunity to challenge the improper intervention in state court and never consented to the FDIC's intervention. Plaintiffs now appropriately challenge the intervention and removal by the FDIC through their Motion for Remand.

*Bank One Texas National Association v. Morrison*, 26 F.3d 544, 547 (5th Cir. 1994), demonstrates the Fifth Circuit's approach to analyzing the propriety of intervention by the FDIC and potential remand of a case to state court. In *Morrison*, the defendant made a clerical error and mistakenly asserted a counterclaim against an insolvent financial institution for which the FDIC was receiver. The FDIC intervened and removed the case to federal court. The defendant sought dismissal of the FDIC and remand, arguing that "the FDIC was never made a proper party to the litigation because it had no legitimate interest in the case; consequently, no right to a federal forum ever arose, and removal was improper." *Id.* at 547.

The Court stated at the outset of its analysis, "Resolution of this contention turns on whether [the defendant] actually stated claims against [the financial institution in receivership] in his counter-claim." *Id.* In other words, resolution of the case turned on whether on whether a claim was being made against assets in the possession of the receivership or the FDIC. The Court cautioned, however, that "federal jurisdiction should not be manipulated by the FDIC's simple intervention in a given case." Id. In its analysis, *Morrison* cited with approval *Bank One, Texas, N.A. v. Elms*, 764 F.Supp. 85, 89-90 (N.D.Tex.1991) (which remanded an action to state court upon determination that the FDIC had no legitimate interest).

In *Morrison*, the Court considered it significant that the defendant alleged duress, fraud,

3

and failure of consideration against the failed financial institution. The Court therefore concluded that the defendant alleged misconduct that could give rise to liability by the failed financial institution's receivership estate, and that therefore the FDIC's intervention was proper.

In the instant case, resolution of Plaintiffs' contention that the FDIC should be dismissed turns on whether the Plaintiff actually stated any claims against Washington Mutual Bank ("WMB"), the WMB receivership or the FDIC in their Petition. A fair reading of Plaintiffs' allegations and causes of actions clearly shows that no claim is being made against WMB, the receivership or the FDIC. The caution against manipulation of federal jurisdiction is especially applicable to this case, given the impossibility of liability on the part of the FDIC given Plaintiffs' allegations and the absence of any other interest on the part of the FDIC.

### 2. The Respondents Mischaracterize the Plaintiffs' Petition

Despite Respondents efforts to mischaracterize the Petition, the fact remains: Plaintiffs assert no claim against the FDIC and no federal law is required to interpret the Plaintiffs' causes of actions. The Plaintiffs make no allegation that calls into question the validity of the Purchase and Assumption agreement by which the Defendants obtained the assets of WMB, executed on September 25, 2008 (the "P&A agreement"), the transfer of assets of WMB, or the actions of the FDIC. No interpretation of the P&A agreement is needed. There is no reasonable possibility that the FDIC could be held liable for any cause of action asserted in Plaintiffs' Petition.

The Defendants' wrongfully state that the Plaintiffs alleged a conspiracy between the Defendants and the FDIC. *See JPMC's Response*, Doc 16, p. 7 ("Their Original Petition reveals allegations that the JPMC Defendants conspired with or coerced the FDIC . . ."). This assertion is false. The FDIC, for its part, does not actually say that the Plaintiffs alleged a conspiracy. *See FDIC Response*, Doc. 17, p. 11. However, the FDIC cherry-picks paragraphs out of context from

the Petition in order to give a false appearance that actions of the FDIC are at issue. *Id.* In addition, the Defendants say that the Plaintiffs alleged that "The FDIC created a phony bidding process . . ." That assertion is also false. *See Id.* at 8; see also Original Petition, ¶ 62.

### 3. The Respondents Misconstrue FIRREA—12 U.S.C. § 1821(13)(D) Does Not Apply to This Case

The FDIC and the Defendants argue for an expansive interpretation of the scope of FIRREA claims process that is improper under the statute. Congress granted the FDIC the power to "act as receiver." 12 U.S.C. § 1819(a). The powers and duties of the FDIC as receiver are set forth in 12 U.S.C. § 1819(d) and includes the power to "determine claims." 12 U.S.C. § 1819(d)(3). The FDIC is provided an administrative procedure to determine claims in 12 U.S.C. § 1819(d)(3).

A jurisdictional bar, 12 U.S.C. § 1821(13)(D) provides:

(D) Limitation on judicial review. Except as otherwise provided in this subsection, no court shall have jurisdiction over:
    (i) any **claim** or **action** for payment from, or any **action** seeking a determination of rights with respect to, the **assets of any depository institution for which the Corporation has been appointed receiver**, including assets which the Corporation may acquire from itself as such receiver; or
    (ii) any **claim** relating to any act or omission of such institution or Corporation as receiver.

(Emphasis added).

Although the term "claim" is not defined in FIRREA, the claims procedure is construed to cover only "claimants to assets in possession of the FDIC." *FDIC v. McFarland*, 243 F.3d 876, 887 (5th Cir. 2001) ("When the FDIC relinquishes ownership, the procedures governing its role as a receiver no longer apply"). As such, the Plaintiffs' causes of action are not "claims." Plaintiffs seek no assets in possession of the FDIC. They have sued only the Defendants, and do not seek any particular assets. Thus, 12 U.S.C. § 1821(13)(D)(ii), which refers only to claims (as opposed

to claims and actions), does not apply to the Plaintiffs' lawsuit. This conclusion is supported by the unqualified language of the FDIC in a Brief in Opposition to certiorari before the Supreme Court of the United States in *Henrichs v. Valley View Development*.[3] In *Henrichs*, the FDIC informed the Supreme Court that "the jurisdictional bars in FIRREA do not apply to suits . . . that are brought, not against the FDIC, but against an assignee of an asset formerly held by the FDIC."[4] In addition, the FDIC explained that the phrase "assets of any depository institution for which the Corporation has been appointed receiver" indicated that Congress intended to limit the application of Section 1821(d)(13)(D) to assets in the possession of the FDIC. This interpretation comports with the goals of speedy and efficient resolutions of receiverships. Accordingly, 12 U.S.C. § 1821(13)(D)(i) does not apply to the Plaintiffs' lawsuit, which is brought against the Defendants based on their own misconduct and concerning only their assets.

The Respondents mistakenly attempt to expand the holding of *Village of Oakwood v. State Bank & Tr. Co.*, 539 F.3d 373 (6th Cir. 2008) beyond its facts. Contrary to the Respondents expansive reading, *Village of Oakwood* did not hold that the jurisdictional bar of FIRREA applies to every case where a plaintiff sues an acquiring bank that purchased assets pursuant to a purchase and assumption agreement with the FDIC. *Village of Oakwood* instead involved particular facts that led the court to make an exception to usual rule that the jurisdictional bars in FIRREA do not apply to suits that are brought, not against the FDIC, but against an assignee of an asset formerly held by the FDIC.

The plaintiffs in *Village of Oakwood* were uninsured depositors suing a bank that acquired assets and deposits from the FDIC as receiver. The plaintiffs sought to recover the

---

[3] No. 07-76, U.S. Supreme Court.

[4] *See Motion for Remand*, Exhibit A, p. 6.

value of their uninsured deposits, and asserted claims for "successor liability" (the acquiring bank being the successor of the bank in receivership), "aiding and abetting the FDIC's breach of its fiduciary duty," "equitable constructive trust," and "contract." *Id.* at 376. The court concluded that "all of their claims against [the acquiring bank] are directly related to acts or omissions of the FDIC as the receiver of [the failed bank]," and held that 12 U.S.C. § 1821(13)(D)(ii) barred their claims. Since all of these claims were either based on allegations of the FDIC's wrongdoing or were based on an obligation owed by the bank that was put into receivership, it is not surprising that the Court found that the claims, which were cognizable against the FDIC-receivership at the outset, was subject to FIRREA.

However, *Village of Oakwood* is fundamentally different from this case. Plaintiffs, by the causes of action brought against Defendants in the instant lawsuit, do not assert any claims against Defendants that could have been asserted against the FDIC as receiver. Plaintiffs' lawsuit is not directly or meaningfully related to the acts or omissions of the FDIC. Plaintiffs do not seek any assets of WMB. The lawsuit relates to the acts and omissions of the Defendants. As such 12 U.S.C. § 1821(13)(D) does not apply to this case. Respondents reliance on or reference to this statutory provision is specious and fails to rise to the level of even a colorable defense.

### 4. There Is No Possibility That FDIC Will Be Required to Indemnify the Defendants

The mere existence of an indemnity provision in the WMB P&A agreement will not support intervention. *See Elms*, 764 F. Supp. at 89 (potential indemnity obligation was insufficient to support intervention of FDIC). The cases cited by the Respondents do not stand for the proposition that the mere existence of an indemnity provision in a P&A agreement will create a federal jurisdiction.

7

For example, in *Pernie Bailey Drilling Co. v. FDIC*, the Fifth Circuit Court states, "this court need not address whether such an indemnification agreement would always justify FDIC intervention and concludes only that, under the facts of this case, the indemnification agreement supports the conclusion that the FDIC was entitled to participate in this litigation." 905 F.2d 78, 80 (5th Cir.1990), In *Pernie Bailey Drilling Co.*, the plaintiff asserted lender liability claims against a bank that was later put into an FDIC receivership. The FDIC then assigned the notes. The Court concluded that the FDIC remained a party to the lawsuit based "in part from its obligation to indemnify," the potential of a "claim of rescission," and the potential for "claims for damages against the closed bank." *Id.* at 80. The case is distinguishable from the instant case because here the potential indemnity obligation is negligible, and there is no basis to conclude there is any potential liability against the closed bank, the FDIC, or that the P&A transaction may be challenged.

*First Gibraltar Bank, FSB v. Bradley*, 98 F.3d 1338, 1996 WL 556852 (5th Cir. 1996), also cited by Respondents, is designated "not for publication" and thus may not be cited as precedent. In any event, in *First Gibraltar Bank*, counterclaims were made against an acquiring bank for which the FDIC could have been liable. The FDIC's intervention was compelled because a state court sought to adjudicate whether FDIC effectively assigned notes and guarantees to an acquiring bank unencumbered by certain obligations. *Id.* at *3. In addition, the FDIC had assumed liabilities at issue in the lawsuit, had guaranteed a rate on loans that were subject of claims, had assumed certain risks of loss, and had agreed to indemnify the purchaser of a note. *Id.* at *4. In the instant case, the FDIC has no basis upon which it may be liable, including the purported indemnity provision.

In the instant case, the indemnity provision in the P&A agreement will not lead to FDIC

liability. An examination of the indemnity provision in the Respondents' P&A agreement shows that the FDIC expressly refuses to indemnify the Defendants for "claims arising from any action or inaction" of the Defendants that were "taken in a manner constituting bad faith, gross negligence or willful misconduct." See P&A agreement, Article XII, section 12.1(a)(7), p. 25, attached as Exhibit 1 to Declaration of Edward John "Jack" O'Neill, Jr., submitted with the Response of Intervenor-Defendant FDIC-Receiver in Opposition to Plaintiffs' Motion for Remand (Doc. 17). It is clear that the Plaintiffs allege misconduct that meets this exception precisely. Not surprisingly, the FDIC, in its pleadings in this case, never admits or argues that an indemnity obligation actually exists. As such, the mere existence of an indemnity agreement in this case provides no support for an FDIC intervention.

    5.    **<u>No Federal Issue Is Implicated In Plaintiffs' Lawsuit</u>**

Defendants confusingly begin part B of their Response with the header, "Even If FIRREA Did Not Apply, The Court Still Would Have Federal Question Jurisdiction."[5] However, the Defendants then spend four pages rehashing arguments relating to the applicability of FIRREA. As stated before, FIRREA does not apply to the causes of actions asserted in the Plaintiffs' Petition. The argument displays a fundamental and purposeful mischaracterization of the nature of the Plaintiffs' claims.[6] Because no aspect of Plaintiffs' case requires application or interpretation of FIRREA, no federal issue exists.

The FDIC claims that it has an interest in preventing a "chilling effect that impermissible suits such as this one could have in deterring potential buyers of failed bank assets in the future."[7]

---

[5] *See JPMC's Response*, p. 12.

[6] *See Motion for Remand*, Doc. 10, pp. 14-17 (description of the Plaintiffs' state law causes of actions)

[7] *FDIC's Response*, p. 15.

This argument fails because the Plaintiffs' suit is not impermissible. As discussed above, FIRREA does not apply to the Plaintiffs' lawsuit because it is not a claim or action that is subject to 12 U.S.C. § 1821(d)(13)(D). In addition, the WMB P&A agreement is not "under attack", nor is the FDIC potentially liable under the Plaintiffs' lawsuit. Compare the FDIC's case, *Arends v. Eurobank and Trust Co.*, 146 F.R.D. 42, 48 (D.P.R. 1993) (FDIC had sufficient interest to intervene where, among other things, "[t]he FDIC could be liable either directly to plaintiffs as the receiver of a going business, or indirectly to the parties for negligently managing the P&A Agreement or for failing to exercise proper fiduciary responsibilities" and the P&A agreement was under attack), with the instant case, where there is no potential for the FDIC being directly liable.

Moreover, no federal law grants the FDIC the power to extend federal jurisdiction to cover everything that may touch upon its actions. For example, in *Federal Deposit Ins. Corp. v. Israel*, the Court the court held, in a case initiated by the FDIC against directors and officers, that it did not have subject matter jurisdiction over the defendants' state law third-party claims. 739 F. Supp. 1411, 1413 (C.D.Cal.1990). The Court interpreted 12 U.S.C.§ 1819(b)(2), and found that the statute explicitly grants jurisdiction only over claims to which the FDIC is a party. *Id.* The reasoned:

> 12 U.S.C. section 1819(b)(2) must be read as an explicit grant of jurisdiction only over claims to which the FDIC is a party. This interpretation keeps the FDIC in federal court, subject to the proviso, but limits the right of otherwise state-bound litigants to haul their disputes into federal court on the coattails of an FDIC intervention.

*Id.* (citing *Healy v. Ratta*, 292 U.S. 263 (1934)) (congressional grant of jurisdiction should be read narrowly). *See also Yankee Bank for Finance & Savings v. Task Associates*, 731 F. Supp. 64, 67 (N.D.N.Y. 1990) (This statute cannot be interpreted to mean that everything the FDIC

touches, it "federalizes"); *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988) (doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction).

The Respondents' interpretation of FIRREA – as immunizing a purchaser under a P&A agreement with the FDIC against tort claims – could encourage behavior that could harm both the state and the national banking systems. No public policy protects illegal conduct. Because of the FDIC's increasing use of its receivership powers to facilitate the seizure and liquidation of the assets and deposits of troubled financial institutions, potential purchasers of such institutions are motivated to negotiate directly with the FDIC for such purchase. Under the Respondents' interpretation of FIRREA, those purchasers would have no liability or accountability for its business torts and other wrongful acts committed with the purpose of causing the seizure of the target institution. Instead, those purchasers would be rewarded for their bad acts, leading to a banking environment that fosters business predators and increased failures of banks. On the other hand, under the Plaintiffs' reasonable interpretation of FIRREA, state law is respected by the federal system, and business competitors are held to a standard of reasonableness in their dealings with each other.

    6.    **The Defendants Fail To Meet Their Burden To Establish Diversity Jurisdiction**

        a.    **JPMC Bank Cannot Ignore Its Representations Made to the Texas Secretary of State Regarding Its Location**

JPMC Bank presents conflicting evidence in support of its contention that it is a citizen of Ohio, and thus is not of diverse citizenship from the Farm Family Plaintiffs.[8] Citizenship of national banking associations for federal jurisdiction purposes is controlled by 28 U.S.C.S. § 1348, which provides, "All national banking associations shall, for the purposes of all other

---

[8] Farm Family Life Insurance Company and Farm Family Casualty Insurance Company are both headquartered in the State of New York.

actions by or against them, be deemed citizens of the States in which they are respectively located." *Wachovia Bank v. Schmidt*, 546 U.S. 303, 307 (2006) held that a national bank, for purposes of 28 U.S.C.S. § 1348 purposes, is a citizen of the State in which its main office, as set forth in its articles of association, is located.

In 2000 and 2004, JPMC Bank submitted certified applications to the Texas Office of the Secretary of State to do business within the state as an out-of-state financial institution pursuant to Texas Finance Code 201.102.[9] JPMC Bank did so in order to enjoy the privileges and benefits of operating a banking business within the State of Texas. In its filing, JPMC Bank certified that "the statements and information provided in this application are true and correct as of the date of the execution," and that "if the person signs a document the person knows is false in any material respect with the intent that the document be delivered to the secretary of state for filing," the person commits a misdemeanor. *Id.* In the 2004 filing, JPMC Bank submitted a certificate under seal from the Office of the Comptroller of the Currency ("OCC"), certifying the corporate existence and fiduciary powers of "JPMorgan Chase Bank, National Association," as being located in "New York, New York (Charter No. 8.)." *Id.* These representations were submitted to the Texas Secretary of State for the purpose that the secretary and the citizens of Texas would rely upon them, and were submitted under criminal penalty for false statement. JPMC Bank never submitted any other filing to Texas in the ensuing years in which it grew to be the largest banking organization in Texas that contradicting its citizenship as being in New York.

JPMC Bank's official certified representations, backed by the certification of the OCC under seal, constitutes direct evidence that JPMC Bank is "located" in New York, as the term "located" is used in 28 U.S.C.S. § 1348 and Wachovia. JPMC Bank's later, self-serving

---

[9] *See Motion for Remand*, Exhibit E.

12

statements, at most create a controverted question of fact that must be resolved in favor of the Plaintiffs. *See Maguno v. Prudential Property and Casualty Insurance Company*, 276 F.3d 720, 723 (5th Cir. 202) (resolving ambiguities against removal); *Storms v. Tuck*, 579 S.W.2d 447, 452 (Tex. 1979) (estoppel by silence to prevent denial of the truth of a previous representation). *Cf Frisby v. Lumbermens Mut. Cas. Co.*, 500 F. Supp. 2d 697, 699 (S.D. Tex. 2007) (in improper joinder context, contested issues of fact should be resolved in the non-movant's favor when there is actual controversy).

### b. JPMC & Co. is Subject to the Personal Jurisdiction in the Texas State Court as Shown in the Plaintiffs' Response to the Defendant JPMC & Co.'s Motion to Dismiss

The Defendant's claim that "[h]ere, the Court cannot exercise personal jurisdiction over JPMC & Co." is shown to be untrue. Plaintiffs' Response to JPMorgan Chase & Co.'s Motion To Dismiss For Lack Of Personal Jurisdiction, which is being filed contemporaneously with this Reply, is hereby fully incorporated by reference. Because JPMC & Co. and JPMC are both subject to personal jurisdiction in this lawsuit, there is no sustainable claim of improper joinder. *See Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281-82 (5th Cir. 2007) ("The burden of proof is on the removing party [to establish improper joinder]. [A]ll contested factual issues and ambiguities of state law [are resolved] in favor of the plaintiff").

### CONCLUSION AND PRAYER

Plaintiffs demonstrate that all Defendants' and the FDIC's arguments against remand are specious and that this case should be remanded to state court. Plaintiffs pray that the Court remand this case to the District Court of Galveston County.

GREER, HERZ & ADAMS, L.L.P.

By: _____ by pcs
Andrew J. Mytelka
Attorney-in-Charge
State Bar No. 1476700
S.D. Tex. I.D. No. 11084
Joe A.C. Fulcher
State Bar No. 07509320
M. David Le Blanc
State Bar No. 00791090
Joseph R. Russo, Jr.
State Bar No. 24002879
Steve Windsor
State Bar No. 21760650
James M. Roquemore
State Bar No. 24058082
One Moody Plaza, 18th Floor
Galveston, Texas 77550
(409) 797-3200
(409) 766-6424 (FAX)

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I certify that on this 1st day of June, 2009, a true and correct copy of the foregoing document was filed with the Court's ECT filing system, which will provide electronic notification of its filing to all counsel who have appeared in this action, including the following counsel of record:

Glen M. Boudreaux
Jackson Walker L.L.P.
1401 McKinney, Suite 1900
Houston, TX 77010

Jack O'Neill
Ms. Jessie A. Amos
DLA Piper LLP (US)
Chase Tower
600 Travis Street, Suite 1700
Houston, TX 77002-3009

Aaron G. Fountain
DLA Piper LLP (US)
1221 South MoPac Expressway, Suite 400
Austin, TX 78746-7650

A courtesy copy is being sent to the
Chambers of the Honorable Melinda Harmon
515 Rusk Avenue
Houston, Texas 77002

_____
Steve Windsor