UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| AMERICAN NATIONAL INSURANCE COMPANY, et al, <br> Plaintiffs, <br><br> vs. <br><br> JPMORGAN CHASE & CO., et al. <br> Defendants | § <br> § <br> § <br> § CIVIL ACTION NO. 3:09-CV-00044 <br> § <br> § <br> § <br> § <br> § |

## RESPONSE OF PLAINTIFFS TO JPMORGAN CHASE & CO.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION [Instr. 19]

Plaintiffs, American National Insurance Company, et al. ("Plaintiffs"), file this Response to Defendant JPMorgan Chase & Co.'s ("JPMC & Co.") Motion to Dismiss for Lack of Personal Jurisdiction [Instr. No. 19] ("Motion to Dismiss" or the "Motion").

### INTRODUCTION

Both parties agree that ruling on the Motion to Dismiss should be deferred until the Court has rule on Plaintiffs' pending Motion for Remand ("Remand Motion"). JPMC & Co. states that the Motion to Dismiss was filed "partially to demonstrate that it was improperly joined in this case in support of its opposition to plaintiffs' motion to remand. Although JPMC & Co. may press these jurisdictional issues in the future, it will not do so now unless the issue is critical to the Court's determination of whether it has subject matter jurisdiction." *See Motion* at 2. Given this statement, the Court should deny the Motion to Dismiss without prejudice to re-filing at such time as JPMC & Co. seeks to pursue it personal jurisdiction arguments.

A ruling on the Motion to Dismiss is also premature because Plaintiffs have not had the opportunity to conduct limited discovery regarding jurisdiction. Plaintiffs are entitled to discovery concerning JPMC & Co.'s contacts with the State of Texas, the degree and extent of

control that JPMC & Co. exercised over the co-defendant, JPMorgan Chase Bank, National Association ("JPMC Bank"), and JPMC & Co.'s ratification of JPMC Bank's actions. *See Freeman v. United States,* 556 F.3d 326, 341-42 (5th Cir. 2009) (discussing that a party is entitled to discovery when facts alleged indicate discovery would likely be fruitful, but not entitled to discovery where the record shows discovery would by useless). In short, the ruling on the Motion to Dismiss should be deferred pending determination of the Remand Motion and until Plaintiffs have had the opportunity to conduct reasonable discovery regarding jurisdiction. Further, Plaintiffs provide, *infra,* a *prima facie* case for personal jurisdiction over JPMC & Co.

## PROCEDURAL BACKGROUND

Plaintiffs filed the instant action in the District Court of Galveston County, Texas on February 24, 2009. In their Original Petition, Plaintiffs assert Texas state law causes of action of tortious interference with existing contract, breach of contract and undue enrichment against JPMC & Co. and its wholly-owned subsidiary, JPMC Bank. There is no dispute that a Texas court may exercise jurisdiction over JPMC Bank.

Plaintiffs served the petition upon Defendant JPMC & Co. through its registered agent for service of process in Texas. JPMC & Co. later filed a special appearance and answer. JPMC & Co., JPMC Bank, and a purported intervenor, FDIC, later filed notices of removal to this Court. Plaintiffs filed a Remand Motion, which is currently pending. The Defendants filed their response to the Remand Motion. In addition, JPMC & Co. filed the Motion to Dismiss for Lack of Personal Jurisdiction in support of its Remand Motion response.

asserting both specific and general jurisdiction.

The Texas law-arm statute extends to the fullest constitutional limits. *See Marathon Oil Co. v. A.G. Ruhras,* 182 F.3d 291, 295 (5th Cir.), *rev'd on other grounds,* 526 U.S. 574 (1999). Requiring JPMC & Co. to defend itself in a Texas court would not offend traditional notions of fair plan and substantial justice. Given the facts discussed *infra,* which include JPMC & Co.'s own statements, a constitutionally sufficient level of minimum contacts exists for the Court to exercise both specific and general personal jurisdiction over JPMC & Co. *See generally Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474 (1985); *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n.9 (1984). The Motion to Dismiss should accordingly be denied because JPMC & Co. has sufficient contacts with Texas support the exercise of jurisdiction pursuant to constitutional limitations and pursuant to *International Shoe* and its progeny.

### 1. Based on the Relationship Between JPMC & Co. and JPMC Bank, the Court May Exercise General or Specific Personal Jurisdiction Over JPMC & Co.

"When a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities, the defendant's contacts are sufficient to support the exercise of specific jurisdiction over that defendant." *Central Freight,* 322 F.3d at 380. (punctuation omitted) (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985)). General jurisdiction exists where contacts with the forum are continuous and systematic. *See Helicopteros,* 466 U.S. at 414.

Although the mere presence of a parent-subsidiary relationship is not sufficient to warrant the assertion of jurisdiction over a foreign parent, contacts with a forum state made by a subsidiary, which is acting as an agent or alter-ego of the parent corporation, or the parent and subsidiary operate as a "single business enterprise," can be attributed to that parent, thus allowing

the exercise of jurisdiction over that parent.[1] *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483, 492 (5th Cir. 1974); *Kim v. Frank Mohn A/S*, 925 F. Supp. 491, 494 (S.D. Tex. 1996). *See Nat'l Plan Adm'rs, Inc. v. Nat'l Health Ins. Co.*, 150 S.W.3d 718, 744-47 (Tex. Ct. App. 2004) (single business enterprise liability based instead on "equity analogies to partnership principles of liability," holding one corporation liable for the debts of another when the two have integrated resources and operations to achieve a common purpose); *De La Hoya v. Coldwell Banker Mex., Inc.*, 125 Fed. Appx. 533, 539-540, 541 (5th Cir. 2005) (unpublished) (finding that parent corporation failed to carry its "heavy burden" of establishing the improper joinder where "single business enterprise" liability alleged); *Suzlon Wind Energy Corp. v. Shippers Stevedoring Co.*, 2008 U.S. Dist. LEXIS 17945 (S.D. Tex. Mar. 7, 2008) (alter ego). *See Product Promotions, Inc. v. Cousteau*, 495 F.2d 483, 493 (5th Cir. 1974), overruled on other grounds, *Insurance Corporation of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702-03 (1982), as stated in *Burstein v. State Bar of California*, 693 F.2d 511, 518 n. 12 (5th Cir. 1982) (subsidiary acting as agent of parent); *Standard Fittings Co. v. Sapag, S.A.*, 625 F.2d 630, 637 (5th Cir. 1980) (subsidiary as agent of parent). In addition, JPMC & Co.'s actions in knowingly accepting the benefits of JPMC Bank's actions demonstrate ratification. *See Maurice Pierce & Associates, Inc. v. Computerage, Inc.*, 608 F. Supp. 173, 177 (N.D. Tex., 1985) (ratification as basis for personal jurisdiction over nonresident defendant).

The purpose of the single business enterprise theory, the alter ego theory and other doctrines designed to pierce the corporate veil is to prevent an inequitable result. *Castleberry v.*

---

[1] Plaintiffs' Original Petition satisfactorily alleges the basis of jurisdiction against JPMC & Co. through the use of the term "JPMC" collectively for both defendants. *See Beneficial Pers. Servs. v. Rey*, 927 S.W.2d 157, 164-65 (Tex. Ct. App. 1996) (by referring to defendants by a single name in the complaint, a plaintiff adequately pleads single business enterprise, because the pleading puts defendants on notice of plaintiff's intention to pursue any available theory of corporate liability).

*Branscum,* 721 S.W.2d 270, 271 (Tex. 1986). The courts have articulated several different rationales for disregarding the corporate fiction, including (1) when it is used as a means of perpetrating fraud; (2) where a corporation is organized and operated as a mere tool or business conduit of another corporation; (3) where it is used to evade an existing legal obligation; (4) where it is relied upon as a protection of crime or to justify wrong. *Id.* All of these conditions apply here to the exercise of specific jurisdiction.

As is described in the Original Petition, JPMC & Co. planned and implemented the plan that enabled it to wrongfully acquire and misuse Washington Mutual, Inc.'s confidential information and thereby acquire the assets of Washington Mutual Bank (WMB") at a below market price. JPMC & Co. signed the confidentiality agreement with Washington Mutual Inc. by which it obtained confidential information about the Washington Mutual organization, and from which JPMC & Co. was enabled to prepare a bid to FDIC for the assets of WMB and to obtain additional capital to meet regulatory requirements. The same shared executives of JPMC & Co. and JPMC Bank were integral in the wrongful scheme detailed in the Original Petition. JPMC & Co. controlled and used JPMC Bank to sign the agreement with the FDIC by which the WMB assets were acquired. Significantly, *when JPMC & Co. announced the WMB acquisition, it made no mention of JPMC Bank's role.*

As JPMC & Co. stated in its press release announcing the WMB acquisition:

> Sept. 25, 2008 – JPMorgan Chase & Co. (NYSE: JPM) tonight announced it has acquired all deposits, assets and certain liabilities of Washington Mutual's banking operations from the Federal Deposit Insurance Corporation (FDIC), effective immediately. Excluded from the transaction are the senior unsecured debt, subordinated debt, and preferred stock of Washington Mutual's banks. JPMorgan Chase will not be acquiring any assets or liabilities of the banks' parent holding company (WM) or the holding company's non-bank subsidiaries. As part of this transaction, JPMorgan Chase will make a payment of approximately $1.9 billion to the FDIC.

6

*See Remand Motion,* Exhibit G.[2]

JPMC & Co. further affirmed that it controlled, or acted as a single entity with JPMC Bank, in Investor Presentation material dated September 25, 2008, "Acquisition of assets, deposits and certain liabilities of Washington Mutual's banks by JPMorgan Chase." *See Remand Motion,* Exhibit H. Despite a thorough discussion of the acquisition of WMB, nowhere in the presentation material is the name, JPMorgan Chase, National Association mentioned; in contrast, on every page is listed the name JPMorgan Chase & Co. The presentation emphasizes the "Strategic Fit," and "Financially Compelling" aspects of the acquisition, and that "WaMu provides unique opportunity to expand retail banking franchise and generate attractive returns for JPMorgan Chase shareholders." *Remand Motion,* Exhibit H at 2. Hence, it is clear that total control and responsibility for the acquisition was vested in JPMC & Co. despite the fact that JPMC Bank was the entity that signed the purchase and assumption agreement with the FDIC and acquired legal title to WMB's assets. This is a classic case of a parent exercising such control over a subsidiary that the actions and contacts of the subsidiary with a forum should be attributed to the parent. In addition, the press releases clearly indicate ratification by JPMC & Co.

As such, it is clear that JPMC Bank was the alter ego and/or agent of JPMC & Co. in the WMB transaction. In addition, the Defendants ("JPMC", as described in the Original Petition) operated as a single business enterprise where the two entities have integrated resources and operations to achieve the common purpose of tortiously interfering with the rights of investors having contracts with Washington Mutual as means of getting these bank branches for a pittance, well below their true value. The Plaintiffs' litigation clearly results from injuries that "arise from or relate to" JPMC & Co.'s activities. *See Burger King,* 471 U.S. at 474. Specific jurisdiction

---

[2] The press release is available at Defendants' website, at http://investor.shareholder.com/jpmorganchase/press/releases.cfm

may be constitutionally exercised over JPMC & Co.

### 2. Review of All Relevant Facts Confirms the Court May Exercise General Personal Jurisdiction Over JPMC & Co.

General jurisdiction exists when defendant's contacts are unrelated to the cause of action but are "continuous and systematic" and "substantial." *Helicopteros,* 466 U.S. at 414 n.9. The exercise of general personal jurisdiction is supported by the same single-enterprise/piercing of the veil reasons already discussed. *See, e.g., Patin v. Thoroughbred Power Boats, Inc.,* 294 F.3d 640 (5th Cir. 2002) (where the parent totally controls the actions of the subsidiary so that the subsidiary is the mere alter ego of the parent, jurisdiction is appropriate over the parent as well).

Further, the general jurisdiction of JPMC & Co.'s is further evidenced from page five of the Investor Presentation,[3] where JPMC & Co. boasts that "JPMorgan Chase"[4] operates 722 bank branches in Texas; and Texas is the state in which the Defendant has second largest number of branches in its entire national operation. On page six, the Defendant affirms that JPMC & Co. is the number one bank in terms of market share in the State of Texas, with 13.0% of the market and $37.7 billion in deposits.[5]

In addition, as noted in the Plaintiffs' Remand Motion, JPMC & Co. designated a registered agent for service of process within the State of Texas in accordance with Texas Business Corporation Act, art. 8.10 (service of process on foreign corporations). JPMC & Co. was served with the Original Petition through its registered agent for service of process in Texas.

---

[3] See Remand Motion, Exhibit H, Investor Presentation by JPMorgan Chase & Co. entitled "Acquisition of Assets, Deposits and Certain Liabilities of Washington Mutual's Banks by JPMorgan Chase," dated September 25, 2008, p. 1-2, 5-6, 7 ("Investor Presentation").

[4] Nowhere in the Investor Presentation is the co-defendant, JPMorgan Chase Bank, National Association mentioned.

[5] The Texas banking and employment markets have already been adversely affected JPMC & Co.'s deal. Already, the Defendant has closed a number of Texas branches. See Remand Motion, Exhibit I, Houston Business Journal, January 28, 2009, "Chase to close 36 area WaMu branches," MySA, January 31, 2009, "13 S.A.-area WaMu branches to close."

More important, JPMC & Co. registered with the Texas Secretary of State to transact business in the State of Texas pursuant to the Texas Business Corporation Act, art. 8.05. *See Remand Motion,* Exhibit F, attached "Certified copy of Application for Certificate of Authority of JPMorgan Chase, & Co." JPMC & Co. fails to explained why it would register, and pay the fee to register, if it did not intend to transact business in Texas or be willing to subject itself to the Texas courts

JPMC & Co. disingenuously appears to deny that it was subject to or paid taxes to the State of Texas. *Motion to Dismiss* at ¶ 18 ("Exhibit F . . . does not support Plaintiffs' allegation that JPMC & Co. was subject to or did pay taxes here."). However, counsel for Plaintiffs personally confirmed with the office of the Texas Secretary of State that JPMC & Co. paid taxes to the State of Texas.[6]

JPMC & Co. makes a bold, but wrong, statement that "no Texas state court has held that the [statute permitting non-residents to register with the Secretary of State] acts as a consent to jurisdiction over a corporation."[7] At least two Texas cases contradict the cases cited by the defendant. In *Goldman v. Pre--Fab Transit Co.*, the court determined that a foreign corporation consented to jurisdiction for trial of out-of-state auto accident within Texas by registering to conduct business within state. 520 S.W.2d 597 (Tex. Civ. App. Houston [14th Dist.] 1975, no writ). In *Acacia Pipeline Corp. v. Champlin Exploration, Inc.*, a foreign corporation was held to have consented to jurisdiction by registering to do business and maintaining registered agent for service in Texas in lawsuit involving contract made outside of Texas. 769 S.W.2d 719, 720 (Tex. App.--Houston [1st Dist.] 1989, no writ).

Given JPMC & Co.'s relationship with its subsidiary, admitted extensive banking

---

[6] See Affidavit of James Roquemore, paragraph 5.

[7] See Motion to Dismiss, p. 9.

network in Texas, market dominance, registration to transact business in the State of Texas, payment of taxes, and appointment of a registered agent for service of process, it purposefully availed itself of the privilege of doing business in Texas, and enjoys the same rights and privileges as a domestic corporation. *See* TEX. BUS. CORP. ACT art. 8.02, 8.05, 8.10. These facts tend to support a finding of general jurisdiction or consent to jurisdiction. These facts also demonstrate the need to conduct additional discovery regarding JPMC & Co.'s additional contacts with the State of Texas that are implied by these facts. The Plaintiffs' have served the Defendants with discovery requests in this regard, but the Defendants have ignored the requests during the pendency of their removal.

3. **Exercise of Jurisdiction Over JPMC & Co. is Fundamentally Fair**

If a plaintiff makes a *prima facie* showing of minimum contacts, then the burden shifts to the defendant to show that the court's exercise of jurisdiction would not comply with "fair play" and "substantial justice." *Caulder v. Jones,* 465 U.S. 783, 789-90 (1984). In making a fundamental fairness determination, a court must examine: (1) the burden on the defendant; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the states' shared interest in furthering fundamental social policies. *Id.* A review of these factors shows that it is fair and reasonable that JPMC & Co. should expect to defend itself in a Texas state court.

First, JPMC & Co. does not seriously argue that it would be burdened by defending this suit in Texas. Moreover, JPMC & Co.'s wholly-owned subsidiary JPMC Bank is already defending this suit in Texas, and is represented by the same counsel as is currently representing JPMC & Co.

Second, Texas has a significant interest in securing relief under its laws. The allegations

in this case involve the bank that controls the banking market in Texas. Texas has a strong interest in adjudicating the wrongful business dealings of one of the largest corporations doing business within its boundaries, and in ensuring that businesses operate within legal and ethical norms. Texas has a great interest in providing its citizens relief from tortious harm, including the Plaintiffs.

Third, Plaintiffs have an interest in securing effective relief in Texas. The investment contracts in this case were purchased in the State of Texas and Plaintiffs are either Texas citizens or have significant Texas contacts. Plaintiffs consider the District Court of Galveston County, Texas to be the forum that will provide the most convenient and effective relief. JPMC & Co. says in essence that it is "everywhere," and does not show that trial in Galveston burdensome. As JPMC & Co. states on its web page:

> JPMorgan Chase & Co. (NYSE: JPM) is a leading global financial services firm with assets of $2.1 trillion and operations in more than 60 countries. . . . JPMorgan Chase serves millions of consumers in the United States and many of the world's most prominent corporate, institutional and government clients under its J.P. Morgan, Chase and WaMu brands.[8]

Fourth and Fifth, the judicial system's interest in efficient resolution of controversies and the states' shared interest in furthering fundamental social policy all show that requiring JPMC & Co. to appear in a Texas court is fundamentally fair. There is no interest of the interstate judicial system or substantive social policies of the several states that cautions against jurisdiction over JPMC & Co. in this case. As is discussed in the Remand Motion, this action involves causes of action based only on Texas state law. By preserving the integrity of state laws against business torts and other unlawful actions, wrongdoers are held accountable, and national ethical business norms are strengthened.

---

[8] See Exhibit A, a screen shot from the home page for JPMorgan Chase & Co., which is located on the Internet at http://www.jpmorganchase.com.

11

## PRAYER

Plaintiffs ask the Court to deny JPMorgan Chase & Co.'s Motion to Dismiss for Lack of Personal Jurisdiction.

Respectfully submitted,

GREER, HERZ & ADAMS, L.L.P.

By: *[signature]* Andrew J Mytelke by permission *[signature] James Roquemore*
Andrew J. Mytelka
Attorney-in-Charge
State Bar No. 1476700
S.D. Tex. I.D. No. 11084
Joe A.C. Fulcher
State Bar No. 07509320
M. David Le Blanc
State Bar No. 00791090
Joseph R. Russo, Jr.
State Bar No. 24002879
Steve Windsor
State Bar No. 21760650
James M. Roquemore
State Bar No. 24058082
One Moody Plaza, 18th Floor
Galveston, Texas  77550
(409) 797-3200
(409) 766-6424 (FAX)

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I certify that on June 1, 2009 a copy of the this document was filed with the Court's ECT filing system, which will provide electronic notification of its filing to all counsel who have appeared in this action, including the following counsel of record:

Glen M. Boudreaux
Jackson Walker L.L.P.
1401 McKinney, Suite 1900
Houston, TX 77010

Jack O'Neill
Ms. Jessie A. Amos
DLA Piper LLP (US)
Chase Tower
600 Travis Street, Suite 1700
Houston, TX 77002-3009

Aaron G. Fountain
DLA Piper LLP (US)
1221 South MoPac Expressway, Suite 400
Austin, TX 78746-7650

_____
James M. Roquemore

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| AMERICAN NATIONAL INSURANCE COMPANY, et al, <br> Plaintiffs, <br><br> vs. <br><br> JPMORGAN CHASE & CO., et al. <br> Defendants | § <br> § <br> § <br> §   CIVIL ACTION NO. 3:09-CV-00044 <br> § <br> § <br> § <br> § |

## ORDER

Before the Court is Defendant JPMorgan Chase & Co.'s Motion to Dismiss for Lack of Personal Jurisdiction [Instr. 19]. The Court has reviewed the record and arguments of counsel and finds that the Motion lack merit. It is, therefore,

ORDERED that Defendant JPMorgan Chase & Co.'s Motion to Dismiss for Lack of Personal Jurisdiction [Instr. 19] is hereby DENIED.

_____
MALINDA HARMON
UNITED STATES DISTRICT JUDGE

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| AMERICAN NATIONAL INSURANCE COMPANY, et al, <br> Plaintiffs, <br><br> vs. <br><br> JPMORGAN CHASE & CO., et al. <br> Defendants | § § § § § § § § § § | CIVIL ACTION NO. 3:09-CV-00044 |

## **AFFIDAVIT OF JAMES M. ROQUEMORE**

Before me, the undersigned notary, on this day personally appeared James M. Roquemore, the affiant, a person who is known to me. After I administered an oath, affiant testified:

1. "My name is James M. Roquemore. I am over 18 years of age, of sound mind, and capable of making this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

2. I am an Attorney at the law firm Greer, Herz & Adams, L.L.P. Andrew Mytelka and the law firm Greer, Herz & Adams, L.L.P. represent the Plaintiffs, American National Insurance Company, American National Property and Casualty Company, American National General Insurance Company, Farm Family Life Insurance Company, Farm Family Casualty Insurance Company, Pacific Property and Casualty Company, American National Lloyds insurance Company, National Western Life Insurance Company, and Garden State Life Insurance Company in the above-captioned action, *American National Insurance Company, et al. vs. JP Morgan Chase & Co., et al.*, Cause No. 3:09-cv-00044 in the United States District Court for the Southern District of Texas Division (the "Lawsuit").

3. I am preparing this affidavit on behalf of the Plaintiffs for submission with Response of Plaintiffs to JPMorgan Chase & Co.'s Motion to Dismiss for Lack of Personal Jurisdiction.

4. Attached hereto as Exhibit 1 is a true and correct copy of a screen shot from the home page for JPMorgan Chase & Co., which is located on the Internet at http://www.jpmorganchase.com. The page. was printed on June 1, 2009.

5. In April of 2009, I telephoned the office of the Texas Secretary of State and discussed with a representative the standing of JPMorgan Chase & Co. with regard to the payment of taxes. The representative stated that JPMorgan Chase & Co. had paid taxes to the State of Texas and was current as of that date.

I declare under penalty of perjury that the foregoing is true and correct."

Further Affiant sayeth not.

Executed on June 1, 2009.

                                                         _____
                                                         James M. Roquemore

Sworn to and subscribed before me by James M. Roquemore on June 1, 2009.

                                                         _Louise Van Zandt_____
                                                         Notary Public in and for the State of Texas

*[NOTARY SEAL]*



LOUISE VAN ZANDT
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
OCT. 26, 2010

- 4 -

# EXHIBIT 1

Site map 

Contact us  Privacy/security  Search

# JPMorgan Chase & Co.



A leader in global financial services

JPMorgan Chase & Co. (NYSE: JPM) is a leading global financial services firm with assets of $2.1 trillion and operations in more than 60 countries. The firm is a leader in investment banking, financial services for consumers, small business and commercial banking, financial transaction processing, asset management, and private equity. A component of the Dow Jones Industrial Average, JPMorgan Chase serves millions of consumers in the United States and many of the world's most prominent corporate, institutional and government clients under its J.P. Morgan, Chase and WaMu brands.

- About JPMorgan Chase
- Community partnership activities
- Governance
- Contact us

**News**
- Chase extends branch hours
- JPMorgan Chase to present at the Sanford C. Bernstein Strategic Decisions conference on May 27
- J.P. Morgan launches escrow services in India helping companies mitigate counterparty risk
- Government concludes no need for JPMorgan Chase to raise additional capital
- J.P. Morgan offers enhanced check cashing services for payroll checks cashed at Wal-Mart stores
- J.P. Morgan to provide custody and cash management services to Flagstone RE
- More news

**Company sites**
- Chase
- J.P. Morgan

**JPMorgan Chase & Co.**
2008 Annual Report and 2009 Proxy

**Wednesday, May 27**
Jamie Dimon, Chairman & CEO presents at Bernstein Strategic Decisions Conference
10:00 a.m. (EDT)

Log on to
Select a service

Open an account
Select an account...

### "The Big Dig": Understanding What Happened to Credit Markets

Insights by Michael Cembalest, Chief Investment Officer, J.P. Morgan Global Wealth Management

Learn more

### THE WAY FORWARD



- An informational series to highlight the things JPMorgan Chase is doing to help our customers and communities.

Learn more

Terms & conditions | USA PATRIOT Act Certification | USA PATRIOT Act Recertification | © 2009 JPMorgan Chase & Co.

JPM|37.26|10:14 EDT|06/01/2009