IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| AMERICAN NATIONAL INSURANCE COMPANY, et al. § § § Plaintiffs, § § vs. § § FDIC, as Receiver for Washington Mutual Bank, Henderson, Nevada, et al. § § § Defendants. § § | CIVIL ACTION NO. 3:09-CV-00044 |

**REPLY IN SUPPORT OF JPMORGAN CHASE DEFENDANTS' MOTION TO TRANSFER OR DISMISS FOR IMPROPER VENUE, AND JOINDER IN MOTION OF INTERVENOR-DEFENDANT FDIC-RECEIVER TO TRANSFER OR DISMISS FOR IMPROPER VENUE**

1.   JPMorgan Chase & Co. ("JPMC & Co.")[1] and JPMorgan Chase Bank, N.A. ("JPMC Bank"; collectively with JPMC & Co. sometimes referred to as the "JPMC Defendants") moved to transfer this case to the United States District Court for the District of Columbia (the "DDC") or, in the alternative, to dismiss the action for lack of subject matter jurisdiction under FIRREA.  As part of that motion, the JPMC Defendants also joined in the prior-filed motion of the FDIC in which the FDIC sought the same relief.[2]

---

[1]   JPMorgan Chase & Co. files this motion subject to its Special Appearance and without waiving its right to challenge personal jurisdiction in this matter.

[2]   Plaintiffs incorrectly assert that the JPMC Defendants did not seek dismissal in their motion.  Aside from praying for dismissal in the motion to transfer or dismiss, by joining in the FDIC's Motion for Transfer and Dismissal for Improper Venue, the JPMC Defendants made the following request:

to the extent that the Court determines that transfer to the District for the District of Columbia would not serve the interest of justice, the FDIC-Receiver respectfully submits that this action should be dismissed for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3), without prejudice to its being refiled by plaintiffs in the proper federal district.

*See* Motion to Transfer Case to United States District Court for the District of Columbia, filed by the FDIC, as Receiver for Washington Mutual Bank, Henderson, Nevada, Docket No. 5, filed Apr. 1, 2009.

---

**REPLY IN SUPPORT OF JPMC DEFENDANTS' MOTION TO TRANSFER OR DISMISS FOR IMPROPER VENUE**
**Page 1 of 12**
5543222v.1

2.      In opposing the JPMC Defendants' Motion, what Plaintiffs fail to address is more revealing than the inconsequential points they borrow and repeat from their Motion For Remand. Plaintiffs' opposition ignores the plain, black-letter principals that require that this case be transferred to the DDC or dismissed, including:

- FIRREA's <u>mandatory</u> venue provision, and the limits on judicial review of issues relating to claims or actions "seeking a determination of rights with respect to the assets of any depository institution …" [12 U.S.C. §§ 1821(d)(6)(A), 1821(d)(13)(D)(i)],

- the unavoidable indemnity link between the Defendants, the FDIC and FIRREA [12 U.S.C. §§ 1823(c)(2)(A) and (c)(4)(A)], and

- the 5th Circuit's mandates in *Heaton*, in which the court recognized the breadth and power of the mandate Congress gave the FDIC to execute an expeditious and unfettered process of rehabilitating and resolving failed institutions. *Heaton v. Monogram Credit Card Bank,* 297 F.3d 416 (5th Cir. 2002).

FIRREA and the case law are clear that this case must be transferred to the DDC or dismissed, and Plaintiffs have offered no legitimate basis to think otherwise. The motion to transfer or dismiss should be granted.

## I.     DISCUSSION

3.      In lieu of a direct response to the JPMC Defendants' Motion to Transfer or Dismiss for Improper Venue, Plaintiffs start by misstating the nature of the JPMC Defendants' requests, either intentionally or based on their fundamental misunderstanding of the law. They imply that the JPMC Defendants should have asked that this action be transferred to the FDIC receivership proceeding, not to a proceeding separate from the FDIC receivership. *See* Plaintiffs' Response to Defendants' Motion to Transfer (Docket No. 24, page 4). But as Plaintiffs well know (or should) the receivership is not a legal proceeding akin to a bankruptcy to

which this case can be transferred, and it is *Plaintiffs*' obligation to submit and fully exhaust their claims under FIRREA.[3]

4.  FIRREA lays out not only receivership procedures for the FDIC to follow independent of judicial proceedings, but also the rules for litigating claims involving a failed institutions' assets. *See* 12 U.S.C. §§ 1821(d)(6)(A), 1821(d)(13)(D)(i). And nothing in Plaintiffs' briefing on their Motion for Remand supports their conclusions (A) that the FDIC is not a properly intervening party; (B) that FIRREA does not apply; or (C) that the case should not be in federal court and should not be transferred.

**A.   The FDIC is a Proper Party.**

5.  As the FDIC itself made clear, a determination that it is a properly intervening party is simple. In sum, (1) Tex. R. Civ. P. 60 allows any party to intervene in the state court proceeding;[4] and (2) 12 U.S.C. § 1819(b)(2)(A) provides that all suits to which the FDIC is a party, *in any capacity*, are deemed to arise under the laws of the United States.[5] Thus should end the inquiry. In short, once the FDIC was a proper party to this action under Texas intervention law, the case immediately arose under Federal law.[6] And because federal subject matter

---

[3]   Once this case rests in the proper venue, the DDC will consider whether to dismiss based upon Plaintiffs' failure to exhaust the administrative claims process under FIRREA.

[4]   *Brook v. Brook*, 865 S.W.2d 166, 172 (Tex.App.-Corpus Christi 1993), *aff'd* 881 S.W.2d 297 (Tex. 1994) (once a plea in intervention is filed, the intervenor becomes a party for all purposes unless the trial court strikes the intervention).

[5]   *Heaton v. Monogram Credit Card Bank*, 297 F.3d 416, 426 (5th Cir. 2002) (once the FDIC is a party, the entire action is "deemed to arise under the laws of the United States, conferring instant subject matter jurisdiction over the case).

[6]   In accordance with 28 U.S.C. § 1446, the FDIC and the JPMC Defendants removed this case to the district and division within which the action was pending. The JPMC Defendants are now merely asking that the case be transferred to the correct federal court pursuant to FIRREA, or, alternatively, dismissed. District courts have ordered such transfers s*ua sponte*. *See Kirby v. Mercury Sav. and Loan Ass'n*, 755 F.Supp. 445 (D.D.C. 1990) (FIRREA related transfer); *United Sav. Bank v. Rose*, 752 F.Supp. 506 (D.D.C. 1990) (same). District courts have gone farther and entirely dismissed actions *sua sponte* where plaintiffs have failed to exhaust administrative remedies under FIRREA. *Friederichs v. Gorz*, 2009 WL 1606980 at * 3-4 (D. Minn. June 8, 2009) ("[a]t bottom, Plaintiffs' failure to properly submit their claims for administrative review or sue in the correct forum means that the

jurisdiction is determined at the time of removal, there is nothing further for this Court to consider. *See Bank One Texas N.A. v. Morrison*, 26 F.3d 544, 547 (5th Cir. 1994). *See also Nolan v. Boeing Co.*, 919 F.2d 1058, 1063 n. 5 (5th Cir.1990), *cert. denied,* 499 U.S. 962, 111 S.Ct. 1587, 113 L.Ed.2d 651 (1991)) (the existence of federal subject matter jurisdiction is determined at the time of removal); *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 265 (5th Cir. 1995) (a plaintiff may not defeat removal by subsequently changing his damage request because post-removal events cannot deprive a court of jurisdiction once it has attached).

6. Even if the Court were to entertain an analysis under Federal Rule 24, however, the outcome would still be the same. Plaintiffs discussed intervention under Rule 24(a) in their Motion for Remand, but their effort was meaningless given their refusal to address the leading Fifth Circuit case: *Heaton v. Monogram Credit Card Bank*, 297 F.3d 416 (5th Cir. 2002). The FDIC detailed *Heaton* and all aspects of federal intervention under Rule 24(a) and (b) in its Opposition to Plaintiffs' Motion for Remand (Docket No. 17, pages 8-19).[7] Plaintiffs were silent in response.

B. **FIRREA's Mandatory Venue and Judicial Review Provisions Cannot be Ignored.**

7. The question of proper venue and procedure is also simple. Plaintiffs do not even discuss FIRREA's venue provision. It requires that lawsuits related to claims like Plaintiffs be brought either in the DDC or the district within which the depository institution's principal place of business is located, which in this case is the Western District of Washington State. 12 U.S.C. § 1821(d)(6)(A). And as between the only possible venue choices under FIRREA, the United States District Court for the District of Columbia presents by far the more convenient and logical

---

Court lacks jurisdiction over the claims against [failed bank]. Accordingly, the Court also lacks jurisdiction over the remaining claims.")

[7] The JPMC Defendants incorporate herein the Response of Intervenor-Defendant FDIC-Receiver in Opposition to Plaintiffs' Motion for Remand. (Docket No. 17).

venue. *See* JPMC Motion for Transfer or Dismissal for Improper Venue, pages 6-10, relating to the applicability of 28 U.S.C. Section 1404(a).

8. Instead, Plaintiffs (i) make a confusing and erroneous argument that their causes of action are not "claims" within 12 U.S.C. § 1821(13)(D); (ii) try to distinguish and minimize the effect of the *Village of Oakwood* cases; and (iii) mischaracterize and improperly minimize the important role of the FDIC's indemnification obligations to JPMC Bank. Plaintiffs' efforts are misguided.

    **(i)    Plaintiffs Assert "Claims" Pursuant to Section 1821(d)(13)(D).**

9. In *FDIC v. Scott*, the Fifth Circuit examined as a matter of first impression the very question of what constitutes a "claim" under § 1821(d)(13)(D)(ii) of FIRREA. *FDIC v. Scott*, 125 F.3d 254, 259 (5th Cir. 1997). The Court determined that Scott's counterclaim was indeed a "claim" under subsection (ii) and therefore Scott was required to exhaust his administrative remedies under FIRREA. *Id.*

> FIRREA denies jurisdiction to federal courts over "any claim relating to any act or omission" of the receivership. § 1821(d)(13)(D)(ii). Here, Scott's claim arises from an "act" of the FDIC in its capacity as receiver - its lawsuit against him. Thus the plain language of the statute dictates that Scott must first bring his claim administratively.

Other courts have reached the same conclusion. *RTC v. Western Techs., Inc.*, 179 Ariz. 195, 877 P.2d 294, 300 (Ariz. Ct. App. 1994) ("The [FIRREA] statute does not define 'claim'; it is therefore reasonable to assume Congress intended to give the word its ordinary legal meaning, *i.e.*, a 'cause of action.'"); *American First Federal, Inc., v. Lake Forest Park., Inc.*, 198 F.3d 1259, 1264-65 (11th Cir. 1999) (The germane question is whether the remedy sought by a party, regardless of its label, is encompassed by Section 1821(d)(13)(D), that is, whether the assertion is in reality a claim against the assets or actions of the failed institution or the RTC as receiver).

Section 1821(d)(13)(D), moreover, covers not only claims related to acts of the FDIC as receiver, but all claims "related to" the failed bank's assets. And Plaintiffs have not attempted to argue, and they cannot, that their claims do not relate to WMB's assets (if in the receivership process their WMB bonds are paid in full, for example, they will be paid from WMB's assets). Moreover, Plaintiffs complain that JPMC Bank purchased WMB's assets from the FDIC at the fire sale price of $1.9 billion. An argument that Plaintiffs are not seeking a determination as to *these assets* is difficult to comprehend and inconsistent with their pleadings in this case.

10. Instead of dealing properly with the fact that their claims relate to the FDIC's conduct as receiver (the sale to JPMC Bank) and to WMB's assets (those the FDIC sold), Plaintiffs attempt to inject into Section 1821(d)(13)(D) a requirement that simply is not there. They argue that a "claim" must relate to assets in possession of the FDIC. But the subsection does not contain any such requirement, and Plaintiffs provide no support to the contrary.

### (ii) *Village of Oakwood* is the Rule – Not the Exception.

11. Without support, Plaintiffs argue that *Village of Oakwood* is an "exception" to the self-proclaimed "usual" rule that the jurisdictional bars in FIRREA do not apply to an assignee of the assets of a failed financial institution.[8] To the contrary, *Village of Oakwood* presents a thorough, well-reasoned and contemporary analysis of FIRREA and its critically important public policy considerations. *Village of Oakwood v. State Bank & Trust Co.*, 519 F. Supp. 2d 730 (N.D. Ohio 2007), *aff'd* in 539 F.3d 373 (6th Cir. 2008). The opinions of both the district court and the Sixth Circuit reveal a deliberate effort to address broadly the precise legal issues

---

[8] That rule is "usual" only as to Judge McBryde. As set forth in JPMC's Opposition to Remand, Judge McBryde's opinions are based upon very different facts and were decided 17 years ago, prior to *Heaton v. Monogram Credit Card Bank of Georgia*, 197 F.3d 416, 425 (5th Cir. 2002) (The FDIC was a proper party based upon the broad policy considerations that the FDIC had in protecting the proper and consistent application of the Congressionally designed framework to ensure the safety and integrity of the federal deposit insurance system).

present in this case related to the exigent circumstances under which an assuming bank purchases assets of a failed financial institution. The result of the courts' analyses was a complete explication of the breadth of FIRREA's mandate to the FDIC:

- to permit claimants to avoid the provisions of (d)(6) and (d)(13) by bringing claims against the assuming bank – would encourage the very litigation FIRREA aimed to avoid. *Village of Oakwood*, 519 F. Supp at 738.

- permitting a claimant to pursue a claim despite its failure to exhaust remedies would thwart FIRREA's purposes and permit creditors to evade the comprehensive administrative claims procedures envisioned by the statute. *Id.*

- plaintiffs' naked assertion appears to be an argument that because the Uninsured Depositors have sued only [assuming bank], rather than the FDIC, their claims fall completely outside the framework of FIRREA's administrative process. The problem with this novel argument is that all of their claims against [assuming bank] are directly related to acts or omissions of the FDIC as the receiver of [the failed bank]. *Village of Oakwood*, 539 F.3d at 386.

- because the claims that the Uninsured Depositors are attempting to assert are disallowed as a result of their failure to comply with the administrative-claims process, they have no further rights or remedies with respect to such claims[s] despite the fact that they purport to bring them against State Bank rather than the FDIC. *Id.*

Simply put, the arguments Plaintiffs are making here – particularly as to the intersection of Sections 1821(d)(6) and (d)(13)(D) – are no different from those in *Village of Oakwood*, and the Plaintiffs have offered the Court no reason to reach a contrary conclusion.

### (iii) Plaintiffs Fail to Address the Indemnity-Authorizing Provisions of FIRREA.

12. The Court need not go beyond the first page of the P&A Agreement to confirm that, through FIRREA and the FDIC, Congress granted direct indemnity protections to the assuming bank. See Exhibit 1 to the FDIC's Response in Opposition to Plaintiffs' Motion for

Remand. (Docket No. 17). Congress authorized such grant of indemnity to the assuming bank under 12 U.S.C. 1823(c)(2)(A), which authorizes the FDIC

> to guarantee such other insured depository institution or the company which controls or will acquire control of such other insured depository institution against loss by reason of such insured institution's merging or consolidating with or assuming the liabilities and purchasing the assets of such insured depository institution or by reason of such company acquiring control of such insured depository institution.

Congress could not have been clearer in its intent to protect a financial institution that agrees to purchase the assets of a failed financial institution under exigent circumstances. 12 U.S.C. § 1823(c)(4)(A) likewise allows the FDIC to do what it determines necessary to meet its obligations, including by assuming direct or contingent liability for future payments as long as the FDIC believes it is the least costly of all possible methods for meeting its obligations. While the FDIC is most certainly a proper party to this action, JPMC is also entitled to the *direct* protections afforded under FIRREA. Plaintiffs once again are silent with regard to these sections of FIRREA and JPMC Bank's independent link thereto.

13. Instead, Plaintiffs simply declare in their Reply in Support of Remand that the JPMC Defendants stand no chance of prevailing on an indemnity claim against the FDIC because Defendants' conduct constituted "bad faith, gross negligence or willful misconduct." See Plaintiffs' Reply (Docket No. 23, page 9). Plaintiffs are asking this Court to summarily conclude - during the jurisdictional and venue phase of the case - that the Plaintiffs will win on the merits and the JPMC Defendants will be barred from obtaining relief under the indemnity agreement. So while Plaintiffs' position may be interesting, it is irrelevant to whether the FDIC's potential indemnification obligations give it a substantial interest in the case.

14. Plaintiffs also argue that the indemnity agreement is insufficient to bestow proper party status upon the FDIC, because the FDIC has not conceded that the JPMC Defendants will win on a claim of indemnity. *See* Plaintiffs' Reply (Docket 23, page 9). Again, a determination with regard to any or all potential indemnity obligations is premature and not relevant to whether the FDIC is a properly intervening party. However, it is relevant that having received JPMC Bank's demand for indemnification the FDIC believes that it has significant interests to protect, including its potential indemnity obligation, warranting its intervention in this lawsuit.[9]

C. **Plaintiffs "Evidence" In Opposition to The Defendants Motion to Transfer Under Section 1404(a) Is Unavailing.**

15. Plaintiffs seek to dissuade this Court from considering the proper venue pursuant to § 1404(a) by attaching the affidavit of Gregory S. Garrison. It is defective in every regard.

16. Mr. Garrison is a transactional attorney with Plaintiffs' law firm, who, presumably, represents Plaintiff American National Insurance Company and perhaps its subsidiaries from time to time. Although it is not clear, Garrison seems to aver that the case should remain in Texas because certain investment decisions of the non-Texas Plaintiffs are made on behalf of these Plaintiffs in League City, Texas.

17. First, the affiant demonstrates no personal knowledge of the facts in the affidavit and it should be stricken on that basis alone. *See Richardson v. Oldham*, 12 F.3d 1373, 1378-79 (5th Cir. 1994); *Thomas v. Atmos Energy Corp.*, 223 Fed. App'x 369, 374 (5th Cir. 2007). Mr. Garrison wholly fails to specify the capacity in which he knows or has become familiar with Plaintiffs' operations and corporate relationships. *Id.*

---

[9] The FDIC detailed significant general interests and duties in its Opposition to Plaintiffs' Motion for Remand, including (1) broad interest in protecting the proper and consistent application of the Congressionally designed framework to ensure the safety and integrity of the federal deposit insurance system; and (2) preventing the chilling effect that impermissible suits such as this one could have in deterring potential buyers of failed bank assets in the future. See pages 9-12.

18. Second, Mr. Garrison's factual averments are not relevant to this Court's determination of venue because Plaintiffs' alleged injuries do not arise out of any investment decision. Rather, Plaintiffs repeatedly assert, in no uncertain terms, that it is the alleged conduct of JPMC Defendants that caused Plaintiffs' injuries. Therefore, the affidavit of Garrison does not and cannot support Plaintiffs' flawed argument that this case should be maintained in Texas based upon § 1404(a) or otherwise.

## II.   PRAYER

For the foregoing reasons, as well as those presented in the Motion of Intervenor-Defendant FDIC-Receiver to Transfer or Dismiss for Improper Venue, the JPMC Defendants respectfully request that this Court transfer this action in its entirety to the United States District Court for the District of Columbia or, in the alternative, dismiss the action for improper venue, and grant the JPMC Defendants such other and further relief to which they may be justly entitled.

        Respectfully submitted,

By: /s/ Glen M. Boudreaux
    Glen M. Boudreaux
    State Bar No. 02696500
    Federal Id. No. 4168
    **JACKSON WALKER L.L.P.**
    1401 McKinney, Suite 1900
    Houston, Texas 77010
    (713) 752-4404
    (713) 754-6712 - Fax
    Email: gboudreaux@jw.com

ATTORNEY-IN-CHARGE FOR
DEFENDANTS JPMORGAN CHASE & CO.,
AND JPMORGAN CHASE BANK, N.A.

**OF COUNSEL:**
Maryellen Shea
State Bar No.00793948
Federal Id. No. 33905
Chevazz Brown
State Bar No. 24059498
Federal Id. No. 946412
**JACKSON WALKER, L.L.P.**
1401 McKinney, Suite 1900
Houston, Texas 77010
(713) 752-4200
(713) 752-4221 – Fax
mshea@jw.com
cbrown@jw.com

## CERTIFICATE OF SERVICE

This is to certify that on this 22nd day of June, 2009, a true and correct copy of the foregoing document was filed with the Court's ECF filing system, which will provide electronic notification of its filing to all counsel who have appeared in this action, including the following counsel of record:

Mr. Andrew J. Mytelka
Greer, Hertz & Adams, L.L.P.
One Moody Plaza, 18th Floor
Galveston, Texas 77550
Telephone: (409) 797-3200
Facsimile: (409) 766-6424

Mr. Jack O'Neill
Ms. Jessie A. Amos
DLA Piper LLP (US)
1000 Louisiana, Suite 2800
Houston, Texas  77002-5009

Mr. Aaron G. Fountain
DLA Piper LLP (US)
401 Congress Avenue, Suite 2500
Austin, Texas  78701-3799

/s/ Glen M. Boudreaux
Glen M. Boudreaux